MICHAEL J. NOLAN and BRIDGET NOLAN, his Wife vs.
GOTTLEIB TRABER.

*Presumption of Coercion by the Husband in prosecutions
against Husband and Wife jointly—Action of Slander by
husband and wife for Slander of the wife—Sufficiency of
the declaration—Province of the jury in determining the
question of Willfulness of the charge—Measure of damages.*

The presumption of coercion by the husband in cases of indictment or prose-
cutions against husband and wife jointly is only *prima facie*, subject to be
controlled by evidence that the wife intervened voluntarily and not by com-
pulsion.

M. J. N. and B. N. his wife sued G. T. for slander.  The first count of the
declaration, after alleging that a certain stable containing goods, &c., had
been set on fire, alleged that the defendant "contriving and wickedly and
maliciously intending to injure the said B. N. in her good name, fame and
credit, and to bring her into public scandal, infamy and disgrace with and
among her neighbors and other good citizens of the State, and to cause it to
be believed and suspected by them that the said B. N., had been guilty of the
crime of wickedly, willfully and maliciously burning said stable, and to
subject her to the pains and penalties by the laws of this State made and
provided against, and to be inflicted upon, persons guilty thereof in the
premises, and to vex and harass the said B. N. in a certain discourse which
the said defendant had with one F. Z., of and concerning the said B. N.,
and of and concerning the said burning of the said stable, which had
therein goods, wares, and merchandise, falsely and maliciously spoke and
published, of and concerning the said B. N., in the presence and hearing of
the said F. Z., these false, scandalous, malicious and defamatory words, that
is to say : 'Those damned Irish people the N's set it on fire,' meaning that
the plaintiffs set on fire the said stable which had therein goods, wares and
merchandise;  and also these false, scandalous, malicious and defamatory
words, 'they have been waiting for a favorable windy night to set it on
fire,' meaning that the plaintiffs had been delaying to set the said stable on
fire until a favorable windy night should occur, which would be favorable

to the destruction of the said stable by fire; and meaning also that the said plaintiffs had set said stable on fire." HELD:

1st. That the offence with which the said B. N. in this count was alleged to have been charged was one for which she was liable to be prosecuted and punished if found guilty.

2nd. That the charge did not import an averment that the act was done by the husband and wife in the presence of each other.

3rd. That under this count the question whether the defendant intended to charge a willful burning of the stable was one proper to be submitted to the jury.

4th. That the jury, should they find for the plaintiffs, might render their verdict for punitive as well as compensatory damages.

APPEAL from the Court of Common Pleas.

This was an action for slander brought by the appellants against the appellee. The declaration contained two counts; the second was abandoned. The first count averred as follows: For that before the committing by the defendant of the grievances hereinafter mentioned, a certain stable in Baltimore county, State of Maryland, which was the property of one Frederick Traber, having therein goods, wares and merchandise, had been burned by fire; and the said defendant contriving and wickedly and maliciously intending to injure the said Bridget Nolan in her good name, fame and credit, and to bring her into public scandal, infamy and disgrace with and among her neighbors and other good citizens of the State, and to cause it to be believed and suspected by them that the said Bridget had been guilty of the crime of wickedly, willfully and maliciously burning said stable, and to subject her to the pains and penalties by the laws of this State made and provided against, and to be inflicted upon, persons guilty thereof in the premises, and to vex and harass the said Bridget, in a certain discourse which the said defendant had with one Francis Zabinsky, of and concerning the said Bridget, and of and concerning the

said burning of the said stable, which had therein goods, wares and merchandise, falsely and maliciously spoke and published of and concerning the said Bridget, in the presence and hearing of the said Zabinsky, these false, scandalous, malicious and defamatory words, that is to say: "*Those damned Irish people, the Nolans, set it on fire,*" meaning that the plaintiffs set on fire the said stable, which had therein goods, wares and merchandise; and also these false, scandalous, malicious and defamatory words: "*They have been waiting for a favorable windy night to set it on fire,*" meaning that the plaintiffs had been delaying to set the said stable on fire until a favorable windy night should occur, which would be favorable to the destruction of the said stable by fire; and meaning also that the said plaintiffs had set said stable on fire.

*Exception.*—At the trial the plaintiffs offered the three following prayers:

1. If the jury shall find from the evidence, that a stable which belonged to one Frederick Traber, and which had therein lumber and other articles, as stated in the evidence, was destroyed by fire, and that the defendant, in the hearing of the witness, Zabinsky, spoke the following words: "*Those damned Irish people, the Nolans, set it on fire,*" and that he meant by those words that the plaintiffs had willfully burned the said stable, then the plaintiffs are entitled to recover, and the verdict must be in their favor.

2. If the jury shall find a verdict for the plaintiffs under the first prayer, they may award such damages as they in their judgment shall think justified by all the circumstances of the case, not only for the purpose of giving compensation for the injury done to the feelings of Mrs. Nolan, but also for the purpose of punishing the conduct of the defendant.

3. If the jury shall find from the evidence, that a stable which belonged to one Frederick Traber, and which had therein lumber and other articles, as stated in the evidence, was destroyed by fire, and that the defendant, in the pre-

sence and hearing of the witness, Zabinsky, spoke the following words : " Those damned Irish people, the Nolans, set it on fire ;" and that he meant by those words that the plaintiff, Bridget, had willfully burned the said stable, then the plaintiffs are entitled to recover, and the verdict must be in their favor.

And the defendant offered the following prayer :

That although the jury shall find from the evidence that the defendant, in the conversation testified to by the witness, Zabinsky, used, in regard to the plaintiffs, the language charged in the first count in the declaration, yet if the jury shall find from the evidence that the plaintiffs were then husband and wife, then the said charge did not impute to the plaintiff, Bridget, any crime for which she could have been indicted and convicted and punished corporally, and therefore the verdict of the jury must be for the defendant on the first count.

The Court (GAREY, J.) refused the plaintiffs' prayers, and granted the defendant's prayer. The plaintiffs excepted. The jury rendered a verdict for the defendant and judgment was entered accordingly. The plaintiffs appealed.

The cause was submitted to BARTOL, C. J., BOWIE, STEWART, MILLER and ALVEY, J.

*R. Emmett Jones* and *W. Shepard Bryan*, for the appellants.

The defamatory words being spoken against both husband and wife, if they are actionable a joint action can be maintained for the injury done to the wife. *Ebersoll vs. Krugg,* 3 *Binney,* 555 ; *Gazynski vs. Coburn,* 11 *Cushing,* 16.

The words imported that they had both burned the stable. They were a slander of the husband, and also a slander of the wife. It was no less a slander of the wife, because it included also the husband.

They imputed to the wife a crime, for which (under Art. 30, sec. 8, of the Code,) her life might have been forfeited, if she had been guilty. They were therefore actionable *per se*. *Griffin vs. Moore*, 43 *Md.*, 251.

The question is not whether she would have been convicted, for it is presumed that no innocent person would be convicted ; but the question is whether the words impute a crime. *Folkard's Starkie on Slander*, &c., 108.

It is therefore irrelevant to argue that the wife might be acquitted by the jury on the presumption that she was under her husband's coercion. She might also be convicted, notwithstanding the presumption. 1 *Wharton's Criminal Law*, secs. 67–81, &c.; 1 *Bishop C. L.*, sec. 363 ; 1 *Russell on Crimes*, 21, 26, 433 ; 1 *Hale P. C.*, 147 ; 2 *Lewis C. C.*, 229 ; 4 *Bl. Com.*, 29 ; *Commonwealth vs. Lewis*, 1 *Met.*, 151 ; *State vs. Bentz*, 11 *Mo.*, 28 ; *State vs. Harvey*, 3 *N. H.*, 65 ; *State vs. Nelson*, 29 *Maine*, 329 ; *Rex vs. Price*, 8 *C. & P.*, 19.

Any person charged with crime might be convicted or acquitted, according as the evidence appeared at the trial. Such is not the test, but it is whether the words impute a crime punishable corporally.

*M. Starr Weil* and *Bernard Carter*, for the appellee.

It is to be observed that the action is brought upon behalf of the plaintiff, Bridget ; the other plaintiff, her husband, being only joined for conformity. The husband could not, in this action, obtain any damages for the alleged slander of him. For any *such* damages he must sue alone. 1 *Chitty on Pl.*, 83 ; *Dengate vs. Gardner*, 4 *Mees. & W.*, 6 ; *Lewis vs. Babcock*, 18 *Johnson*, 443 ; *Cole vs. Turner*, 6 *Modern*, 149.

It is settled in Maryland, that a defendant may ask an instruction to the jury that though the jury find that the alleged slanderous words were used, as charged in the declaration, yet they do not in law impute a crime, and so

are not actionable nor sufficient in law to maintain the action. *Wagaman vs. Byers,* 17 *Md.,* 184 ; *Dorsey vs. Whipps,* 8 *Gill,* 462.

In order to sustain this action, (no special damage being alleged,) the words alleged to have been used must impute a crime to the plaintiff, Bridget, for which she could have been convicted and punished with corporal punishment. *Dorsey vs. Whipps,* 8 *Gill,* 462 ; *Wagaman vs. Byers,* 17 *Md.,* 184.

The language alleged in the declaration to have been used, must be *prima facie* actionable ; that is it must naturally and *per se* impute to the plaintiff, Bridget, a crime for which she could have been convicted and punished with corporal punishment.

If the *prima facie* import of the language alleged to have been used does not impute a crime to the plaintiff, Bridget, for which she could have been convicted and punished, then, unless there is sufficient in the colloquium to change this *prima facie* import and to show that the language as used did impute such crime, the action cannot be maintained. *Jones vs. Hungerford,* 4 *G. & J.,* 402 ; *Wagaman vs. Byers,* 17 *Md.,* 184 ; *Dorsey vs. Whipps,* 8 *Gill,* 462.

The language charged in the first count, (the other count is out of the case,) did not, according to its *prima facie import,* as interpreted by the decisions just cited, impute to the plaintiff, Bridget, any crime for which she could have been convicted and punished with corporal punishment.

The meaning ascribed in the *innuendo* to the language alleged to have been used, is binding on the plaintiffs and they must abide by it. *Folkard's Starkie on Slander, sec.* 565, (*mar. p.* 448.)

The meaning so ascribed in said declaration is that " the *plaintiffs* set on fire the said stable ; and that the *plaintiffs* had been *delaying* to set the said stable on fire until a

windy night should occur, which should be favorable to the destruction of said stable by fire ; and meaning also that the said *plaintiffs* had set said stable on fire."

The charge, as alleged, was that the plaintiffs, (husband and wife,) had *jointly together*, and as *one act*, set fire to the stable, in accordance with a *preconceived concerted* plan.

Now it is settled that if a wife act *in company* with her husband in the commission of any felony, (other than treason or homicide,) it is *at least* a *prima facie* presumption, (and according to some authorities, a *conclusive* presumption,) that she acted under his coercion, and consequently she cannot be convicted of any crime in so acting. 1 *Greenl. Ev.*, sec. 28 ; 3 *Greenl. Ev.*, sec. 7, *and notes ;* 1 *Russell on Crimes*, 33, 41 ; *Bash vs. Sommer*, 20 *Pa.*, 162, (*at bottom of page.*)

Whatever is done in the company of the husband the law construes a coercion. 1 *Russell on Crimes*, 33.

Even if it be only a *prima facie* presumption that the wife who acts with her husband does so by coercion, yet, as according to the authorities previously cited, the words charged must be *prima facie* actionable, that is, must naturally and *per se* impute a crime to the plaintiff, it follows, that as the plaintiff, Bridget, was only charged with acting jointly with her husband, and therefore in his company or presence, it was a charge which, so far from *prima facie* and *per se* imputing to her a crime for which she could be convicted, *prima facie* was one on which she could *not* be convicted.

As the granting of the defendant's prayer disposed of the case, the plaintiffs' prayers were properly rejected. *Wagaman vs. Byers*, 17 *Md.*, 184 ; *Dorsey vs. Whipps*, 8 *Gill*, 462.

Moreover, the third prayer was properly rejected because it put to the jury to find a different meaning for the words alleged than that put on them by the innuendo, which

cannot be done. *Folkard's Starkie on Slander*, sec. 564. (*star p.* 448.)

The meaning, according to the innuendo, was that the two plaintiffs had jointly burned the stable. The prayer asked the jury to find that the defendant meant not to charge *both* the plaintiffs with having burned the stable, but only to charge Bridget with doing so.

Moreover, the plaintiffs' first and third prayers were rightly rejected because the legal meaning of the words charged to have been used in the first count, and incorporated into said prayers, did not import that said stable had been *willfully* burned ; nor did the innuendo so aver ; and therefore the plaintiffs were not entitled to recover ; nor were they entitled by their prayers to leave to the jury to find a meaning to the words which they did not naturally or legally bear. *Dorsey vs. Whipps,* 8 *Gill,* 462 ; *Jones vs. Hungerford,* 4 *Gill & J.,* 402 ; *Folkard's Starkie on Slander,* sec. 565.

Bowie, J., delivered the opinion of the Court.

This appeal involves the right of a wife to an action for slanderous words imputing to her a crime committed by her jointly with her husband. The common law assuming that the free agency of a married woman is merged in the dominion of her husband, presumes that if a wife act in company with her husband in the commission of a felony, other than treason or homicide, she acts under his coercion and consequently without any guilty intent.

Sir William Blackstone said this doctrine was at least a thousand years old in England, being found among the laws of King Ina, the West Saxon.

Hence, words which charged the wife with crimes in the presence of her husband, or jointly with him, imputed no act for which she would be criminally liable, and therefore constituted no slander and were not actionable according to the earlier authorities.

An eminent jurist in a recent work says, this presumption may now be rebutted by positive proof that the woman acted as a free agent ; and in one case that was much discussed, the Irish Judges appear to have considered that such positive proof was not required, but that the question was always one to be determined by the jury on the evidence submitted to them. *Rex vs. Stapleton*, 1 *Jebb. C. C.*, 93 ; *Taylor's Law of Evidence, p.* 191, (*6th Edition.*)

The relation of husband and wife, however absolute in the past, no longer implies such subserviency of the latter as to make her the slave of her husband.

By gradual modifications of the common law, the wife has become in a great measure the peer of the husband in the control of her property and person, enjoying exemptions and privileges which raise her above all suspicion of moral constraint, except in rare instances. The legal status of the wife, although legally inferior in respect of the "*jus disponendi*" of some species of property, and subjection to marital rights, is yet so elevated as to protect her from all necessity of compliance with the husband's will in matters "*mala in se.*" The better opinion would seem to be that the presumption of coercion by the husband, in cases of indictment or prosecutions against husband and wife jointly, is only *prima facie*, subject to be controlled by evidence that the wife intervened voluntarily and not by compulsion. *Rex vs. Hughes*, 2 *Lewin C. C.*, 229 ; *Rex vs. Pollard*, 8 *C. & P.*, 553 ; *Rex vs. Stapleton*, 1 *Jebb. C. C.*, 93 ; 1 *Greenleaf Evid.*, sec. 28, *note* 5 ; 3 *Greenleaf Evid.*, sec. 7.

The first count of the plaintiffs' *narr.* alleged that the defendant charged the appellant, Bridget Nolan, with an offence for which she was liable to be prosecuted and punished criminally, if found guilty. It does not charge that the act was done by the husband and wife in the presence of each other. The plaintiffs' first prayer, premising that if the jury found " the stable was destroyed by

fire, and that the appellee spoke the words and that he meant by those words that the plaintiffs had willfully burned the stable," affirmed that the plaintiffs were entitled to recover.

The third prayer, relying upon the same facts and words, and that the appellee meant by those words that the plaintiff, Bridget, had willfully burned the stable, affirmed that the plaintiffs were entitled to recover.

It is objected to these prayers that they require the jury to find what the legal meaning of the words charged did not import, and what the innuendo did not aver, and contrary to the innuendo incorporated in the *narr*.

The office of the innuendo is " to explain and show the applicability of some matter already expressed ; it seems to point out where there is a precedent matter, but never for a new charge ; it applies to what is already expressed." *Steph. N. P.*, 2568, *Title, Slander; Rex vs. Horne, Cowp.*, 684 ; *Black vs. Holmes*, 1 *Fox & Smith*, (*Irish*,) 31–48.

Where the words import a charge of crime and the action is for that charge, an innuendo is unnecessary. 2 *Chitty's Prec.*, *p.* 547, *note t.*

The precedent matter charged an offence for which the plaintiffs might have been jointly or severally indicted, and although no innuendo was necessary, yet in either aspect of the case presented by the prayers, the plaintiffs were entitled to recover.

The defendant's prayer, being the converse of the propositions expressed in the plaintiffs' first and third prayers, cannot be sustained. But it is further insisted that the legal meaning of the words charged in the *narr.*, did not import that the stable had been *willfully* burned, nor did the innuendo so aver, wherefore it was error to submit to the jury to find a meaning "they did not naturally or legally bear."

It is the very gist of the action for slander that the words were spoken maliciously. To ascertain this, the

jury must determine whether the act imputed to the plaintiffs was willful or involuntary.

Without will or intention on their part, the act complained of would have been an accident. It was therefore incumbent upon the plaintiffs to prove, and the jury to find, the injury charged to have been committed was willful.

Where that is found the law implies malice.

No point has been made in this Court upon the rejection of the plaintiffs' second prayer prescribing the measure of damages. We perceive no error in the principles upon which that prayer is based; it seems to us conformable to the practice and decisions in this State    The Court below being in error in refusing the prayers of the plaintiffs and granting the prayer of the defendant, the judgment will be reversed and new trial awarded.

> *Judgment reversed, and*
> *new trial awarded.*