**Janet M. MANNING, on behalf of herself and all others similarly situated**

v.

**PRINCETON CONSUMER DISCOUNT COMPANY, INC., and Springfield Dodge, Inc.**

Civ. A. No. 74–875.

United States District Court, E. D. Pennsylvania.

Aug. 8, 1974.

David A. Scholl, Richard S. Packel, Delaware Co. Legal Assistance Assn., Inc., Chester, Pa., for plaintiff.

Alan C. Gershenson, Philadelphia, Pa., for Princeton Consumer.

John J. Robinson, Upper Darby, Pa., for Springfield Dodge.

## MEMORANDUM AND ORDER

NEWCOMER, District Judge.

Plaintiff, on behalf of herself and all others similarly situated, alleges that there is an industry-wide practice of writing installment sales of automobiles as if they were a separate cash sale and loan transaction. She further alleges that this practice violates both the federal Truth-in-Lending statute and state law. Both defendants have moved to dismiss the action for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants' motions are granted as to the state law claim but denied as to the federal law claim.

*Factual Background.*

Plaintiff's complaint alleges that on March 2, 1974 the plaintiff agreed to purchase a 1969 Ambassador automobile from defendant Springfield Dodge, Inc. Plaintiff agreed to make a down payment of $300.00, and financing for the balance was to be arranged by Springfield Dodge. On March 11, 1974, the plaintiff received a call from the salesman at Springfield inviting her to come in and complete the transaction. Upon arriving at Springfield Dodge, plaintiff was taken by the Dodge salesman to the offices of defendant Princeton Consumer Discount Company, Inc. The complaint alleges that the plaintiff had never dealt with Princeton previously.

The complaint states that the documents concerning the loan that was to be used to pay the balance of the purchase price of the automobile were typed and prepared for the plaintiff before she arrived. After a short discussion with a Princeton employee, the plaintiff signed the papers. The Princeton employee gave a check made out to the plaintiff and to Springfield Dodge for $1,191.00 to the Dodge Salesman, and gave the plaintiff the check made out to her for $11.84. The salesman then drove plaintiff back to Springfield Dodge, where they picked up the automobile. He directed her to endorse the check for $1,191.00, and she did so.

The complaint alleges that the only memorandum which the plaintiff received regarding the financing of this vehicle was a Federal Disclosure Statement from Princeton, pursuant to § 129 of the Federal Truth-in-Lending Act, 15 U.S.C. § 1639. This document revealed

that the plaintiff was sold credit, life and disability insurance at a total premium of $85.67, and insurance on her personal property for $60.71. Also, she was charged a total finance charge of $558.78, making the total amount owed to Princeton $1,908.00., to be paid in 36 monthly installments of $53.00 each. The complaint alleges that the plaintiff was not told of these insurance provisions by the salesman of either defendant, and that the only discussion which the plaintiff had regarding insurance was with the Princeton employee regarding her auto insurance, which she stated she desired to purchase elsewhere.

### Plaintiff's Contentions.

a. Federal law claim.

■ The plaintiff alleges in the first count of her complaint that Springfield Dodge and Princeton violated section 128 of the Truth-in-Lending Act, 15 U. S.C. § 1638, in that they entered into a credit sale with plaintiff without disclosing the information which that section requires to be disclosed. Section 128 of the Truth-in-Lending Act requires the same disclosures as plaintiffs received under § 129 plus the additional disclosures of cash price, cash downpayment, total downpayment, and the unpaid balance of cash price. Plaintiff does not allege that the seller, Springfield Dodge, extended credit to her, but that the seller arranged for the extension of such credit, which would bring the transaction within the definition of a credit sale under § 103(g) of the Truth-in-Lending Act, 15 U.S.C. § 1602(g).[1]

To determine whether the seller did arrange for credit as that phrase is to be construed, we must turn to regulation Z, the regulations promulgated by the Federal Reserve Board pursuant to the Act. In regulation Z is found a definition of the phrase "arrange for the extension of credit", 12 C.F.R. § 226.2(f):

> " 'Arrange for the extension of credit' means to provide or offer to provide consumer credit which is or will be extended by another person under a business or other relationship pursuant to which the person arranging such credit receives or will receive a fee, compensation, or other consideration for such service or has knowledge of the credit terms and participates in the preparation of the contract documents required in connection with the extension of credit. . . ."

Although plaintiff's complaint does not specifically allege any of the elements necessary to establish an arrangement for the extension of credit under regulation Z, the facts alleged in the complaint, seen as they must be in a light most favorable to plaintiff, support such a claim. The inference could reasonably be made from the facts alleged that a business relationship existed between defendant Springfield Dodge and Princeton Consumer Discount pursuant to which Springfield had knowledge of the credit terms and participate in the preparation of the contract documents required in connection with the extension of credit. In addition, as plaintiff argues, it is doubtful that plaintiff would have a more detailed knowledge of defendants' business or compensation arrangements prior to discovery.

■ Defendant Princeton argues that even if the automobile in question was purchased by plaintiff as part of a credit sale within the meaning of § 128 rather than by a consumer loan within the meaning of § 129, the duty of making

---

1. Section 103(g) of the Truth-in-Lending Act reads as follows: "The term 'credit sale' refers to any sale with respect to which credit is extended or arranged by the seller. The term includes any contract in the form of a bailment or lease if the bailee or lessee contracts to pay as compensation for use a sum substantially equivalent to or in the excess of the aggregate value of the property and services involved and it is agreed that the bailee or lessee will become, or for no other or a nominal consideration has the option to become, the owner of the property upon full compliance with his obligations under the contract."

the disclosures required by Section 128 rested solely on the seller, in this case, Springfield Dodge. In support of this contention Princeton submits a letter propounded by the Director of the Federal Reserve Board on June 4, 1970, in response to an inquiry by a private party.[2]

This inquiry was made by a party in a situation resembling the one alleged here, in that a seller arranged for credit to be supplied to the buyer by a lending institution. The Director's letter states while the arranger of credit, the seller, must comply with section 128, the lending institution is only required to comply with the provisions concerning consumer loans (§ 129). Princeton contends that since plaintiff has conceded in her complaint that Princeton complied with the consumer loan provisions of the act, she has failed to state a cause of action against Princeton. However, we do not believe that this letter resolves all questions concerning a lending institution's obligations under the Act, as it was an advisory response to a specific set of facts which are unknown to the Court at this time.

b. State law claim.

■ In count two of her complaint, plaintiff alleges that the defendants violated the Pennsylvania Motor Vehicle Sales Finance Act (MVSFA), 69 P.S. § 601 et seq. by writing an installment purchase of consumer goods as if it were a cash sale and loan transaction. Plaintiff alleges that this was an installment purchase, and that therefore defendants were bound by the provisions of the MVSFA rather than the Pennsylvania Consumer Discount Company Act (CDCA) 7 P.S. § 6201 et seq., which plaintiff admits was followed. in this transaction. While we have doubts whether the transaction by which plaintiff purchased her automobile falls within the MVSFA's definition of an installment sales contract,[3] we believe that a better ground for dismissing this count is the principle of comity between the federal and state systems. As plaintiff points out in her opposition to defend-

2. The letter from the Federal Reserve Board Director reads as follows:

"3. If the builder is an arranger of credit he would be required to disclose in accordance with § 226.8(b) and (c) of the Regulation before consummation between the purchaser and the creditor. That is insofar as the builder is concerned, this transaction would be a 'credit sale', subject to the above mentioned provisions.

"The lending institution, however, could make disclosures under the loan provisions of § 226.8(b) and (d) of the Regulation, or the builder-arranger and the lending institution could join in making a single disclosure statement under § 226.8(b) and (c) as a credit sale."

3. 69 P.S. § 603 states:

"10. 'Installment sale contract' or 'contract' shall mean any contract for the retail sale of a motor vehicle, or which has a similar purpose or effect under which part or all of the' price is payable in two or more scheduled payments subsequent to the making of such contract, or as to which the obligor undertakes to make two or more scheduled payments or deposits that can be used to pay part or all of the purchase price, whether or not the seller has retained a security interest in such motor vehicle or has taken collateral security for the buyer's obligation, and shall include any loan, and mortgage, and conditional sale contract, any purchase-money chattel mortgage, any hire-purchase agreement or any contract for the bailment or leasing of a motor vehicle under which the hire-purchaser, the bailee or lessee contracts to pay as compensation a sum substantially equivalent to or in excess of the value of the motor vehicle and any other form of contract which has a similar purpose or effect: Provided, however, That the terms shall not include any sale or contract for sale upon an open book account, wherein the seller has not retained or taken any security interest in the motor vehicle sold or any collateral security for the buyer's obligation, and wherein the buyer is not required to pay any sum other than the cash price of the motor vehicle sold in connection with such sale or extension of credit, and wherein the buyer is obligated to pay for the motor vehicle in full within ninety (90) days from the time the sale or contract for sale was made. These terms shall also mean and apply to any extension, deferment, renewal or other revision of such installment sale contract."

ants' motions to dismiss, the question of whether the practice complained of here constitutes a violation of MVSFA is a question of first impression in the state courts and is presently being litigated there. Anderson vs. Automobile Fund, Inc., Sept. Term, 1971, No. 3277, (Phila. Co. C.P.). This Court does not feel that its proper role is to lead the state courts in the interpretation of state law. Moreover, it would be difficult if not impossible for this court to interpret state law in this matter without some pathfinding by the state courts.

## ORDER

And now, to wit, this 8th day of August, 1974, the motion of defendants in the above captioned matter to dismiss count one of plaintiff's complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure is hereby denied. The motion of defendants to dismiss count two of plaintiff's complaint under Rule 12(b)(6) is hereby granted.

And it is so ordered.