Jackie R. SAUERHOFF, Appellant,

v.

The HEARST CORPORATION (BALTIMORE NEWS AMERICAN DIVISION), a body corporate, Appellee.

No. 75–1229.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 8, 1975.

Decided June 10, 1976.

Morgan L. Amaimo, Baltimore, Md., for appellant.

John B. Jaske, Baltimore, Md. (James J. Doyle, Jr., Baltimore, Md., Sherbow, Shea & Doyle, Baltimore, Md., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, BRYAN, Senior Circuit Judge, and FIELD, Circuit Judge

BRYAN, Senior Circuit Judge:

In this diversity action for defamation appellant, Jackie R. Sauerhoff, complained that The Hearst Corp., appellee, of Maryland, libeled him by disseminating in its newspaper the following account:

> *"Boyfriend sues for Raffle Prize*
>
> *$$ Sweeter than Love?*
>
> "Although Lady Luck apparently favored Jackie R. Sauerhoff, his girlfriend appears to have soured on him, according to a suit filed in Circuit Court Tuesday.
>
> "Sauerhoff of the 1100 block Haverhill Road says in his suit that he bought a $10 raffle ticket last month while he and his girlfriend, Miss Linda Adams, of the 3700 block Clarinth Road, were working in the offices of the Masters, Mates, and Pilots Union.
>
> "The suit, filed by attorney Wildon [sic] Leroy Maddox, says Sauerhoff allowed Miss Adams to put her name on the ticket with the verbal agreement they would share the $4,000 prize if fortune smiled on them.
>
> "The ticket turned out to be the winning one, but Miss Adams has since deposited the prize in the Pikesville branch of the Maryland National Bank, refuses to give Sauerhoff his share, and is planning to leave the state, the suit says. The bank is named as a defendant as well as Miss Adams.
>
> "Judge Anselm Sodary signed a temporary restraining order forbidding the bank from paying Miss Adams the money should she request it, as well as forbidding her from receiving the money. No hearing date has been set."

In his declaration in the action the plaintiff in part alleged:

> "[T]hat the words published in the aforegoing article brands, labels and stamps the plaintiff as a person of ill repute and of very low morality; that as a direct result of the words published in the aforegoing article, the plaintiff has been, is, and will be subjected to public scandal, infamy, disgrace, ridicule and contempt, with and to the abhorrence, repugnance and scorn of and upon the part of his

neighbors, his family, his business, and his political associates and colleagues, his clients and the members of the general public; * * *"

The District Judge read the piece as a defamation on its face (commonly designated as a libel per se). However, he held that no action would lie thereon because, apparently, he believed that it intrinsically disclosed no injury for which damages were recoverable. Likewise, he further ruled that no action would lie for damages provable by extrinsic evidence (commonly called a libel per quod) because the proposed extrinsic proof disclosed no *pecuniary* injury.[1] In the latter regard, believing that the only pecuniary damage shown was "the loss of the domestic services of his wife", the Court thought this not to be a loss, since her services had been more expensive than those he procured at his sister's home after his wife had left him. On cross motions, summary judgment went for the defendant.[2]

■ We must disagree with the District Judge's conclusion despite his evident searching study, for we believe that under the Maryland law, so far as we now know it, the undisputed facts[3] dictate this holding: that on its face the wording of the publication amounted to a defamation; that the language thereby proximately caused the plaintiff actual injury, that is, not necessarily out-of-pocket loss but "including impairment of reputation and standing in the community, personal humiliation and mental anguish and suffering"; and that for this injury he was entitled to recover such damages as the trier of the facts found reasonably flowed from the wording itself.[4] Thus our decision rests *solely* on the per se doctrine, but it is, however, subject to the following caveat. No part of the damages recoverable shall include awards against the newspaper for damages based on anything not appearing in the publication and unknown to the newspaper. Cf. *Gertz v. Robert Welch, Inc.,* post, 418 U.S. 323, 349, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). Punitive damages have not been asked. It may now be said, by the way, that *Gertz* possibly discourages use of a per quod premise here.

For the character of the press account we have the forceful and unequivocal determination of the trial court. The District

---

1. Throughout this opinion the terms per se and per quod will be employed with the connotations just given, even though they may be what our late brother, Judge Armistead Dobie, has labeled like-worshipped designations: "rustic relics of ancient asininity". In like tenor was the District Judge's comments upon these juristic fetishes: "[a]nd the Merlinesque touchstones which attach to them, must be identified, whether or not their existence can be rationally justified."

2. The District Judge in true candor termed his decision a prediction or, as he put it, "a guess" of how the State's highest court would resolve the issue since, unfortunately, neither his exploration, nor ours, nor counsel's citations, have unearthed a definitive guide from that court.

3. Although they are in no degree a part of the basis of our decision, for a complete narrative we include this statement of facts, besides the publication, adduced by the plaintiff. At the time of the press account, plaintiff was happily married, but upon reading it, his wife became convinced that her husband had been unfaithful to her. In this conviction she wallpapered the kitchen of their home with the papers containing the story. Immediately thereafter she left her husband and has never returned, at present her whereabouts not being known.

4. In its opinion the District Court refers to the comprehensive discourse, 22 Catholic U.L.Rev. 1 (1972), by Francis D. Murhaghan of Baltimore reviewing the law of slander and libel generally, and especially that of Maryland. He maintains that in an action on a (so-called) libel per se the plaintiff may and, indeed, must plead extrinsic facts of the injury and damages suffered caused by the defamation—that there cannot be presumed or general damages. He attributes the following views to others: that commentator Laurence H. Eldredge, in 79 Harv. L.Rev. 733 (1966) and 25 Vand.L.Rev. 79 (1972), urges "that damages in all libel cases will be presumed and need not be proven"; Dean William L. Prosser, 79 Harv.L.Rev. 1629 (1966), 46 Va.L.Rev. 839 (1960), and Handbook of the Law of Torts (4th ed. 1971) that where the accused words are not defamatory on their face, specific damages must be shown; and that originally the Eldredge position was taken by Restatement of Torts, section 569 (1938). [See also Tentative Draft No. 20, 1974]. We do not attempt to reconcile these scholarly differences.

Judge's pervading legal conclusion is couched with clarity and severity: "In the opinion of this Court the article can be read by innuendo [5] as meaning that Miss Adams and Sauerhoff were having an extra-marital affair. . . . In this case no enlargement of the natural meaning of the words of the article is required".

■ This enunciation is particularly authoritative since, in Maryland, it is for the Court to say what is the import of an accused writing. *Casale v. Dooner Laboratories, Inc.*, 503 F.2d 303 fn. 4 (4 Cir. 1973). *Heath v. Hughes,* 233 Md. 458, 197 A.2d 104, 106 (1964). More, it is a striking and emphatic pronouncement that the publication was intrinsically defamatory. Inescapably, the language depicted the plaintiff as engaged in an amorous association, sketched in terms of "boyfriend" suing his "girlfriend" for money "Sweeter than Love", and the "girlfriend souring" on him, all while working together in the same office. Not a moment's reflection is needed; the message comes through immediately. We accept the District Judge's perception that it all ties in to suggest a covert office "extra-marital affair". This acceptance is notable because jurisdiction rests here on diversity of citizenship and, regrettably, no guidance has been provided by Maryland's highest court. See *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The reason is best expressed in C. Wright, Law of Federal Courts 240 (2d ed. 1970):

"As a general proposition, a federal court judge who sits in a particular state and has practiced before its courts may be better able to resolve complex questions as to the law of that state than is some other federal judge who has no such personal acquaintance with the law of the state. For this reason federal appellate courts have frequently voiced reluctance to substitute their own view of the state law for that of the federal judge. . . ."

For this the author cites *Bernhardt v. Polygraph Co. of America,* 350 U.S. 198, 204, 76 S.Ct. 273, 100 L.Ed. 199 (1956). We see the instant District Judge possessed of these qualifications.

■ The next question is whether this disparagement in the article was an *actionable* defamation. The traditional postulate in the law of slander, a fortiori in libel,[6] is that the following are intrinsically defamatory accusations, viz., those that "charge a crime, impute a loathsome disease, injure the plaintiff in his office, trade or business, or impugning the chastity of a woman". Their presence here is seen by the District Judge: "Today, under Maryland law, at least three of [these] four special categories of slander would appear to be actionable without allegation of proof of special damage". (Citations omitted.) The obvious exception is the loathsome disease. While most of the related decisional law of Maryland involved per quod libels, all of them recognize the existence of actionable per se defamations. See: *Heath v. Hughes,* 233 Md. 458, 197 A.2d 104, 106 (1964); *Foley v. Hoffman,* 188 Md. 273, 52 A.2d 476, 481 (1947); *Bowie v. Evening News,* 148 Md. 569, 129 A. 797, 799 (1925); *Novick v. Hearst,* 278 F.Supp. 277, 279 (D.Md.1968).

Damages allowable for per se liabilities were explicitly circumscribed by Mr. Justice Powell in *Gertz v. Robert Welch, Inc.,* supra, 418 U.S. 323, 349–50, 94 S.Ct. 2997, 3012, 41 L.Ed.2d 789:

"It is necessary to restrict defamation plaintiffs who do not prove knowledge of falsity or reckless disregard for the truth to compensation for actual injury. We need not define 'actual injury,' as trial courts have wide experience in framing

---

**5.** To refresh the memory, the common law pleading terms in per quod libels and their definitions, as we understand them, are and have meaning as follows: the "inducement" is the statement of the extrinsic facts making the words an imputation of ill fame; the "colloquium" is the allegation relating these facts to the words used revealing the defamation of the plaintiff and the "innuendo" is the demonstrating through reference to the inducement, the injurious sense of the utterance or writing.

**6.** *Foley v. Hoffman,* 188 Md. 273, 52 A.2d 476, 483 (1947).

appropriate jury instructions in tort actions. Suffice it to say that actual injury is not limited to out-of-pocket loss. Indeed, the more customary types of actual harm inflicted by defamatory falsehood include impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering. Of course, juries must be limited by appropriate instructions, and all awards must be supported by competent evidence concerning the injury, although there need be no evidence which assigns an actual dollar value to the injury."

In this Maryland concurs: *Jacron Sales Co., Inc. v. Jack Sindorf,* 276 Md. 580, 350 A.2d 688 (1976); *Noland and Wife v. Traber,* 49 Md. 460, 462, 470 (1878). See *Eaton,* The American Law of Defamation Through Gertz v. Robert Welch, Inc. and Beyond: An Analytical Primer, 61 Va.L.Rev. 1349, 1408–51 (Nov.1975).

The publication in suit fits into at least one of the per se categories. Primarily there is the potential injury to the plaintiff in his office, trade or business that might result from the defamation. 53 C.J.S. Libel and Slander § 29b p. 70, § 32a pp. 76–77 and § 40 p. 88. In any event it seems to us that this is a point to be resolved by the District Court, and we will remand for that purpose, vacating the summary judgment.

On return of the case to the trial court it will recall this explication of Maryland law by the State's highest court:

" '[I]n cases of slander, words take their actionable character from the sense in which they appear to have been used, and that in which they are most likely to be understood by those who hear them.' *Garrett v. Dickerson,* 19 Md. 418, 447 (1863)." *American Stores Co. v. Byrd,* 229 Md. 5, 181 A.2d 333, 337 (1962).

Vacated and Remanded.

HAYNSWORTH, Chief Judge (dissenting):

I would affirm for the reasons stated in the opinion of the district court. *Sauerhoff v. The Hearst Corporation,* 380 F.Supp. 117.

I join the majority opinion in its statement of deference to the district judge in the interpretation of Maryland law in this rather quixotic area, but my deference to his interpretation of that law is not selective.

The district court held:

1) That under the law of Maryland, this, at most, was a libel *per quod,* for it did not appear in the article that the plaintiff was married;

2) That in Maryland a libel *per quod* is not actionable unless special pecuniary damage is alleged and proven; and

3) That under Maryland law there are no exceptions to the special damage requirement in libel *per quod* actions; there are no special categories which would be treated as libels *per se.*

I think he is correct in his interpretation of Maryland law, but this leaves no room for a conclusion that under Maryland law this article has somehow become libel *per se* and not libel *per quod.*