575 F.2d 966
 Jose BERRIOS RIVERA, etc., Plaintiffs, Appellees,
v.
BRITISH ROPES, LTD., et al., Defendants, Appellees,
v.
HARNISCHFEGER CORPORATION, Defendant and Third-Party
Plaintiff, Appellee,
v.
LEVITT & SONS OF PUERTO RICO, INC., Third-Party Defendant, Appellant,
v.
COMMERCIAL INSURANCE COMPANY OF NEWARK, NEW JERSEY,
Additional Third-Party Defendant, Appellee.
Jose BERRIOS RIVERA, etc., Plaintiffs, Appellees,
v.
BRITISH ROPES, LTD., et al., Defendants, Appellees,
v.
HARNISCHFEGER CORPORATION, Defendant and Third-Party
Plaintiff, Appellee,
v.
COMMERCIAL INSURANCE COMPANY OF NEWARK, NEW JERSEY,
Additional Third-Party Defendant, Appellant.
 Nos. 77-1257, 77-1258.
 United States Court of Appeals,
First Circuit.
 Argued Feb. 9, 1978.
Decided May 8, 1978.
 
 Charles A. Cordero, San Juan, P. R., with whom Ramon Humberto Vargas, Hato Rey, P. R., was on brief, for defendants, appellants.
 Jaime Pieras, Jr., Hato Rey, P. R., for defendant and third-party plaintiff, appellee Harnischfeger Corporation.
 Gabriel Hernandez Rivera, San Juan, P. R., with whom Feldstein, Gelpi & Hernandez, Old San Juan, P. R., were on brief, for plaintiffs, appellees.
 Before CAMPBELL, BOWNES and MOORE,* Circuit Judges.
 MOORE, Circuit Judge:
 
 
 1
 In this personal injury action, jurisdiction over which is based on diversity between the parties, plaintiff, who was rendered a paraplegic when a cable on a crane snapped, finally succeeded in this action, after three years of discovery and numerous postponed trial dates, to obtain a settlement from the defendant British Ropes, Ltd. (the cable manufacturer) and Harnischfeger Corporation (the crane manufacturer), joined by third-party defendant Levitt & Sons of Puerto Rico, Inc. (the prime contractor) (Levitt) and additional third-party defendant Commercial Insurance Co. (the liability insurer of the subcontractor, Insular Construction Company). The settlement, according to the district judge, was agreed to after a motion to dismiss based on res judicata was denied, and after months of settlement negotiations. An order was entered on March 29, 1977 in the sum of $136,000 to be distributed in equal sums of $34,000 among the four co-defendants and third-party defendants. The settlement order included a provision for compensation due to plaintiff's attorney and provisions pertaining to amounts to be paid to plaintiff's six minor children, who claimed derivatively against the defendants; these amounts had been approved by the court and by the Department of Justice of the Commonwealth of Puerto Rico, which filed its approval papers on February 18, 1977.
 
 
 2
 After the settlement order was entered on March 29, the co-defendant British Ropes filed a motion for reconsideration on April 7, alleging that its share of the settlement was only $30,000. On April 12, the court, over plaintiff's objections, entered an order reducing the contribution of British Ropes to the amount it claimed was due from it. Thereafter, on April 20, Commercial Insurance, which reserved the right, when settlement was entered, to have its third-party dispute with Levitt determined by the court (see Order dated May 31, 1977, Appendix at 48-53), filed a motion alleging that "in view of the 'chipping' tactics" of British Ropes, the order of March 29 should be vacated, and the case should be set for trial. On the same day that Commercial filed its motion, defendant Harnischfeger filed a "Motion Executing Settlement", stating that, in order to satisfy plaintiff's objections to the reduction of the total amount paid to him and his children, it (Harnischfeger) agreed to increase its share of the settlement to $38,000, and thereby cure the deficiency. Harnischfeger's papers impressed upon the court that there had, in fact, been an agreement, and that the motion of Commercial was untimely since it was filed well after the time period, commencing with the filing of the March 29 order of settlement, permitted by the rules for contesting the judgment.
 
 
 3
 On April 22, 1977, the district court denied the motion of Commercial and held that the grievance would be cured by entering an order reapportioning the liabilities of all of the defendants: British Ropes was to pay $30,000; Harnischfeger, in conformance with its motion, would be liable for $38,000; and Commercial and Levitt were both to be held to $34,000 each, as per the March 29 order.
 
 
 4
 On April 27, Levitt filed a motion "withdrawing its offer of settlement"; the next day, Commercial and Levitt filed separate notices of appeal from the March 29 order and from subsequent orders affecting that order. That same day, Commercial filed a motion for reconsideration and to vacate the settlement orders. Although the district court found itself without jurisdiction to consider the motion to vacate since the notice of appeal had been filed, Chief Judge Toledo, in an opinion dated May 31, 1977, chronicled the events that occurred subsequent to the filing of the notices of appeal and noted that, had he retained jurisdiction, he would have denied the motion to vacate.
 
 
 5
 As a first ground of appeal, appellants Commercial and Levitt urge that the orders of March 29 and April 22 (modifying the settlement), and all subsequent orders affecting the settlement issue, should be reversed on the ground that no settlement had in fact been reached. Appellants' major contention is that Commercial's attorney was not present at the second settlement conference, held on February 18, 1977, when the alleged settlement was reached, and that no formal releases or stipulations for judgment were ever drafted by the parties' attorneys, all of which, they argue, indicates that there was never an agreed-upon settlement in the first instance. Appellants claim that, at the settlement conferences, there was only an agreement to recommend settlement in four equal shares to the various parties, but that the district judge erred in entering the settlement orders because there was no true consent.
 
 
 6
 Plaintiff-Appellee objects to the tactics of the appellants/third-party defendants, pointing to specific representations of those parties in their motion papers acknowledging that there had been agreement to pay $136,000 to the plaintiff. Indeed, the docket entry for February 18, 1977 recites that a settlement conference was called, that the settlement of the minors' claims was approved pursuant to the Certificate of Approval of the Department of Justice of the Commonwealth of Puerto Rico, and that defendants were to file cross motions and memoranda regarding apportionment of damages between them. Furthermore, plaintiff refers to a motion filed by appellant Levitt on May 3, 1977, entitled "Motion for a Special Hearing and Further Proceedings Consistent with Settlement Agreement", in which Levitt stated that there had been specific agreement that it would share in the liability to the extent of $34,000.
 
 
 7
 We are persuaded that the settlement orders must be upheld. First, in our task of reviewing the findings and orders of the district court, we must presume regularity, and give due regard to the district judge's proximity to the situation. Second, it is the burden of the appellants to demonstrate that the ruling of the district court was erroneous, and the factual finding underlying the judgment i. e., that there was an agreed settlement cannot be set aside unless it is "clearly erroneous". Fed.R.Civ.P. 52(a). We think that in this case, appellants Commercial and Levitt have not met their burden, and we thus cannot say that the district court erred in sustaining the settlement. Indeed, the facts in the record support this conclusion: first, appellants were served with plaintiff's motion of February 15, 1977 for approval of the settlement of the claim of the minor children, and were later served with an order dated February 18 approving the settlement and directing them to file cross motions and memoranda. The circumstances clearly indicate that a settlement had been reached; if there was none, it is at least unusual that no objections were made at this time. Second, we note that the appellants in this case are Levitt and Commercial,[1] neither of whom was affected by the court's order modifying the distribution of payments; further, they retain the right to submit their claims against one another to the court for judicial determination. Third, neither of the appellants found any reason to complain prior to the timely motion for reconsideration made by British Ropes, which is not a party to this appeal; indeed, Commercial's motion to vacate the March 29 settlement order was not filed until April 20, and it was not predicated on the ground that no settlement had been reached, but was rather an objection to the "chipping tactics" of British Ropes; if this was a ground for grievance as to appellants, it was cured by defendant Harnischfeger's willingness to pay $4,000 more than it had originally agreed to do.
 
 
 8
 Finally, we think that the record shows an independent reason for appellants' attempt to relieve themselves of their settlement obligations: According to the Motion of defendant Harnischfeger dated May 11, 1977, opposing the motion of appellants to withdraw their "offers" of settlement, it appears that there was a decision by the Supreme Court of Puerto Rico rendered in April, 1977 the month after the settlement order of March 29 was entered in which the court discussed the obligations "of owners as to the employees of their contractors and sub-contractors". (See Appendix at 34, Informative Motion of Harnischfeger). As Harnischfeger pointed out, it is not unlikely that that decision, which might have had some effect in a diversity case, may well have entered into the attempts of the contractor and insurer for the sub-contractor to seek more favorable terms by forcing the issues to trial. However, once bound by a settlement given court approval, these litigants should not be permitted to escape their obligations to plaintiff. Again we note that the appellants retain the right to submit their cross claims to the court; thus, if the controlling law has shifted their liabilities, the district court will so determine. However, their obligations to the plaintiff should not be disturbed under the circumstances.
 
 
 9
 Although the underlying issue is the validity of the settlement, appellants devote the major portion of their appellate argument to the propriety of the district court's refusal to dismiss the action on grounds of res judicata. The motion to dismiss was precipitated by virtue of the fact that plaintiff, concurrently with commencing the federal action against these defendants, brought an identical action in the Commonwealth courts. Some of the defendants never filed an answer in that court action. The Commonwealth court once dismissed the action for lack of prosecution, but reinstated it on plaintiff's motion. Thereafter, since the suit remained dormant, the court again dismissed the action under Rule 11 of the Administrative Rules for the Court of First Instance of Puerto Rico, which provides:
 
 
 10
 "The judge in charge of administrative matters . . . shall dismiss, and order the entry of the dismissal judgment, of all civil matters pending in which there has been effected no action by any of the parties during the last six (6) months. . . . A dismissal under this rule shall constitute res judicata."
 
 
 11
 Plaintiff never appealed this dismissal since, by the time it was entered, the federal action was well under way. However, when Commercial was brought into the action by way of a third-party complaint, it moved for dismissal on res judicata grounds. The motion was denied, and the denial was reaffirmed on reconsideration, on the ground of lack of timeliness and on the ground that, under the controlling law of Puerto Rico, the defense was not to be allowed if to do so would permit an injustice.
 
 
 12
 Although appellants contest the propriety of the district court's refusal to apply res judicata in the instant case, we think that the decision is wholly supportable by Puerto Rican law, amply documented by the district court. We, of course, give weight to the district judge's analysis of the local law with which, as a member of the bar of Puerto Rico, he is especially familiar. Graffals Gonzalez v. Garcia Santiago, 550 F.2d 687, 688 (1st Cir. 1977); C. Wright, Law of Federal Courts 271 (3rd ed. 1976). See, also, Bernhardt v. Polygraphic Co., 350 U.S. 198, 204-05, 76 S.Ct. 273, 100 L.Ed. 199 (1956) (decision of local federal judge on question of local law to be given special weight); accord, Sauerhoff v. Hearst Corp., 538 F.2d 588, 591 (4th Cir. 1976); Lomartira v. American Automobile Insurance Co., 371 F.2d 550, 554 (2d Cir. 1967); but see, Luke v. American Family Mutual Insurance Co., 476 F.2d 1015, 1019-20 (8th Cir.), cert. denied, 414 U.S. 856, 94 S.Ct. 158, 38 L.Ed.2d 105 (1973) (although special weight given, circuit court is not bound). We believe that Chief Judge Toledo reached a correct interpretation of the law of Puerto Rico on this point. The courts of Puerto Rico have recognized that in certain cases, the policies of res judicata are not well served by literal application of the procedural rules of the courts. In the case at bar, defendants were not, in fact, put to the task of responding to multiplicious suits: they did not even plead in the state action, and were well aware, it seems, that the federal action was being actively litigated. Their right, protected by the doctrine of res judicaa, not to be harassed by successive litigation was simply not involved in this instance.
 
 
 13
 The district court correctly recognized this point, and properly found that an injustice would be worked were dismissal of plaintiff's federal suit to be permitted.
 
 
 14
 The judgment of the district court is affirmed.
 
 
 
 *
 Of the Second Circuit, sitting by designation
 
 
 [1]
 It is noteworthy that Levitt, in its motion dated May 3, 1977, specifically referred to the "settlement agreement" earlier reached, and Commercial, in its motion of April 20, also alluded to the settlement in the sum of $136,000