HEATH *v.* HUGHES ET AL.

[No. 167, September Term, 1963.]

*Decided February 5, 1964.*

The cause was argued before HENDERSON, HAMMOND, HORNEY, MARBURY and SYBERT, JJ.

*Joseph I. Pines,* with whom were *Max R. Israelson* and *Israelson & Pines* on the brief, for the appellant.

*Robert C. Prem,* with whom were *Hilary W. Gans* and *Niles, Barton, Gans & Markell* on the brief, for the appellees.

MARBURY, J., delivered the opinion of the Court.

Having previously met in the halls of justice with appellant Heath as attorney representing clients in law suits opposing appellee Hughes, the two have now clashed in direct opposition in a libel suit instituted by the former against the latter. A directed verdict in favor of the appellee has brought the parties to this Court. We are asked to decide whether the trial court properly granted the defendant's motion offered at the conclusion of the plaintiff's case on the grounds that the writing was not libelous *per se* and, further, since there was no evidence of special damages, there was no basis for a finding of libel *per quod.*

The declaration was in two counts. Count I charged libel *per se.* Count II, adopting the allegations of Count I purported to set forth the necessary allegations to explain by inducement, colloquium and innuendo that the writing was libelous *per quod.*

The appellant, John F. Heath, is a practicing attorney who previously operated a successful electrical contracting business, but who retired from that business in 1954 to devote his time thereafter exclusively to the practice of law. The appellee, Joseph F. Hughes, is the president of Joseph F. Hughes & Co., Inc., general contractors. On several occasions prior to 1954, Heath had submitted unsuccessful bids to the Hughes company for electrical subcontracting, but he met Hughes personally for the first time in 1955. As an attorney representing the Central Electric Company, Heath appeared in opposition to Hughes' unsuccessful law suit against the City of Baltimore for $610,000.

Heath and Hughes had a second encounter during 1955 when

Heath, again as an attorney, represented one William Stockhausen, trading as Central Electric Company, in a substantial claim against Hughes for money due for labor and materials. Unsuccessful in collecting, suit was filed by Heath for Central Electric against Hughes and the plaintiff recovered a judgment.

There was no further contact between Heath and Hughes until about 1961 when events leading to the instant suit occurred. At that time Heath was retained as attorney for George A. Peters of The George A. Peters Company, which had performed some electrical subcontracting work for Hughes and was having difficulty obtaining payment therefor. Peters turned the collection of the claim (approximately $59,000) against Hughes over to Heath. Heath thereupon made demand on Hughes in behalf of Peters by letter dated October 26, 1961, as follows:

John F. Heath

Attorney At Law

Munsey Building

Baltimore 2, Maryland

October 26, 1961

Joseph F. Hughes Co., Inc.
5 E. Franklin Street
Baltimore Maryland.
Attention: Mr. Hughes.

Re: Overlea Senior High School

Dear Mr. Hughes:

I have been retained by The George A. Peters Company to collect the amount due them for labor and materials furnished and installed by them on the Overlea Senior High School, Baltimore County, Maryland.

I am enclosing herewith their statement of the amount past due, and unless payment is made of this past due amount not later than October 30th, 1961, I expect to have the pleasure of collecting it from you, or your estate, together with interest from the date due.

I know you would not relish my getting such pleas-

ure, so I will expect your re-consideration of your refusal to pay this account by October 30th, 1961.

Yours Positively,
JOHN F. HEATH,
Attorney for
George A. Peters Company.

Enclosure
JFH/P

(Rubber Stamp)
Received Oct. 27, 1961
Joseph F. Hughes & Co., Inc.

This letter was received by Hughes the following day. On October 31, Hughes wrote to Heath's client, The George A. Peters Company, the following letter:

Joseph F. Hughes & Co.
(Incorporated)
General Contractors

Baltimore 2, Md.
5 E. Franklin Street
MUlberry 5-4078

October 31, 1961

The George A. Peters Company
2116 Maryland Avenue
Baltimore 18, Maryland

Re: OVERLEA SENIOR HIGH SCHOOL

Gentlemen:

We are in receipt of a zany letter from a character, signing himself John F. Heath, alleging that you have turned over your affairs to him.

The only Heath, of whom the undersigned has any knowledge, is an electrician who has an office in the Munsey Building and, some time in the past, endeavored to build a business in the electrical contracting field.

As we have always had great confidence in the good

sense and good judgment of your people, we hope that Heath's allegations are completely without basis but will recognize any statement properly authorized by your corporation.

Very truly yours,

JOSEPH F. HUGHES & Co., Inc.,
JOSEPH F. HUGHES,
President.

JFH :rja

It is this letter which gave rise to the present action.

Peters testified that upon receipt of Hughes' letter he was disturbed and discussed it at a regular progress meeting with his five company executives. He made an appointment to see Heath to discuss with him the continuation of Heath's services. Reassured that Heath could handle the claim, Peters allowed Heath to continue to represent him in the matter with Hughes.

Appellant was not entitled to recover under Count II of his declaration, charging libel *per quod*. It is well settled that if the language used is not defamatory *per se*, the plaintiff is required to allege and prove that special damages resulted from the publication. *Bowie v. Evening News*, 148 Md. 569, 129 Atl. 797; *DeWitt v. Scarlett*, 113 Md. 47, 77 Atl. 271; 1 Poe, *Pleading and Practice* (Tiffany's ed.), §§ 174, 572. In this case there is neither allegation nor proof of any special damages. Thus if the alleged defamatory letter is actionable at all, it must be actionable *per se*. Whether the words used were in and of themselves actionable is a question of law. *American Stores Co. v. Byrd*, 229 Md. 5, 181 A. 2d 333; *Kilgour v. Evening Star Co*. 96 Md. 16, 53 Atl. 716.

Although conceding that the letter might not afford a sufficient cause of action to him as an individual, the appellant contends that the letter tended to injure him in his legal profession and for that reason is actionable *per se*. The legal principle he states is quite correct. In *Thompson v. Upton*, 218 Md. 433, 146 A. 2d 880, we declined to formulate an all-inclusive definition of libel. Generally it includes any unprivileged false and

464

malicious publication which by printing, writing, signs or pictures tends to expose a person to public scorn, hatred, contempt or ridicule. *Foley v. Hoffman,* 188 Md. 273, 284, 52 A. 2d 476. We did state in *Upton* at page 437 of 218 Md. that libel encompassed any publication relating to one's trade, business or employment if such publication imputes to him some lack of due qualifications to fill his position, or some positive past misconduct which will injuriously affect him in that livelihood, citing *Foley v. Hoffman, supra,* and *Pollitt v. Brush-Moore, etc., Inc.,* 214 Md. 570, 136 A. 2d 573.

The only question is whether the letter of Hughes, which must be considered in its entirety, *Bowie v. Evening News, supra.* Newell, *Slander and Libel* (4th Ed.), § 268, disparages Heath in his profession as an attorney at law to the extent of defamation. We think that the letter, while it may have been imprudent, does not on its face impute a want of integrity or capacity and thus was not actionable *per se.* 53 C.J.S. *Libel and Slander,* § 38.

The appellant extracted from the letter several phrases in an attempt to prove the libel. A *seriatim* discussion of these is not warranted since none is actionable *per se.* The only words which merit even limited discussion are "zany" and "character". While "zany" was clearly used as an adjective describing Heath's letter to Hughes, the appellant would have us interpret this as a reflection upon the writer of such a letter. In *Walker v. D'Alesandro,* 212 Md. 163, 129 A. 2d 148, we had an occasion to examine the rule distinguishing an attack upon the work of an author or artist with an attack upon the man himself. While the instant case does not involve precisely the same thing, the rule is sufficiently broad to be applicable here.

In some circumstances, as for example in *Walker v. D'Alesandro, supra,* the work may indeed reflect upon the character of the author, particularly where the charge concerns one's morals or ethics. But we do not think that it necessarily follows that an attorney who on one particular occasion is charged with writing a "zany" letter, as a result thereof can be characterized as unfit for the practice of law.

It may be that some of the definitions and synonyms for the adjective "zany" to be found in Webster's Third New International Dictionary are disparaging, *e.g.: fantastically or irra-*

*tionally ludicrous, mildly insane;* synonyms—*crazy, clownish, idiotic.* Hughes testified that he did not consider Heath to be in any way mentally disturbed, but that he did find both Heath and his letter amusing. Indeed, the more modern usage of the word "zany" seems to imply clownishness, as those who keep abreast of the entertainment world can attest.

The crux is that the disparaging words, to be actionable on their face, must affect the person in some way peculiarly harmful to him in his profession. III Restatement, *Torts,* § 573, *Comment e.* If the disparagement be of a general nature, equally discreditable to all persons, it is not enough to constitute defamation unless that quality under attack is peculiarly valuable to one in his profession. *Ibid.* Thus, for example, where an attorney was referred to as a "bum" by a public speaker, it was held that while the language was vituperative and abusive, it did not impute unfitness in professional character and was not for that reason actionable *per se. Weidberg v. La Guardia,* 10 N. Y. S. 2d 445. Paraphrasing what we said in *Kennedy v. Crouch,* 191 Md. 580, 590, 62 A. 2d 582, by substituting the word "zany" for "screwball," there can be no denial that the word "zany" is an epithet of disparagement. But the word "zany" does not connote opprobrium or reprehensibility.

Nor do we think the word "character" as used in Hughes' letter is any more disparaging than "zany." While the word has several meanings, the connotation intended here, we think, was *odd* or *eccentric.* Suffice it to say that without any intent to defame, this epithet has been bestowed upon some of history's geniuses who have made significant contributions to civilization.

Aside from the specific words just discussed, however, the appellant argues that the implications which the letter, on the whole, make are (1) that Heath was not an attorney at all and (2) that Heath was not authorized to represent Peters and hence was acting improperly. It is true that such implications may be drawn from the letter, but as we have said, in the absence of proof of special damage there can be no recovery unless the words are libelous *per se.* We think they are not.

> *Judgment affirmed, costs to be paid*
> *by appellant.*