Robert D. NOVICK
and
Kasjoco Promotion and Management Co., Inc., Plaintiffs,

v.

The HEARST CORPORATION, Defendant.

Civ. No. 18673.

United States District Court
D. Maryland.
Jan. 18, 1968.

278

David R. Cohan, Paul S. Beatty and Weinberg & Green, Baltimore, Md., for plaintiffs.

William A. Agee, Theodore Sherbow and Sherbow, Shea & Doyle, Baltimore, Md., for defendant.

HARVEY, District Judge:

In the July 3, 1967 edition of its daily newspaper, the Baltimore *News American* published on its front page an article, portions of which read as follows:

"RESORT JAILS 7

ON DOPE CHARGES

"OCEAN CITY, July 3—Seven more young people were arrested at this resort spot yesterday for alleged violation of the narcotics laws, bringin [*sic*] to 14 the total apprehended since the four-day Fourth of July weekend started Friday.

"Four of the seven young hippies were operators of the Soul Bridge teenage hangout at one time, described by City Solicitor Marcus J. Williams as a 'nice place for teenagers to hang out.' Of the 14 youths arrested in the crackdown on marijuana violations, four were girls, one a 16-year-old from Salisbury.

\* \* \* \* \* \*

"Yesterday's arrests were made in a private cottage in West Ocean City.

\* \* \* \* \* \*."

Claiming that such article was false, malicious and libelous *per se*, Robert D. (Novick), the manager of the Soul Bridge, and Kasjoco Promotion and Management Co., Inc. (Kasjoco), the corporate owner of this establishment, have sued The Hearst Corporation for damages in the amount of $2,000,000.[1] Count I of the complaint contains allegations with reference to Novick's cause of action. As to such Count, the defendant has filed an

---

1. Suit was originally filed in the Circuit Court for Baltimore County and removed to this Court pursuant to 28 U.S.C.A. § 1441.

answer in which it admits some of the allegations, denies others and raises certain specific defenses. Count II contains allegations with reference to Kasjoco's cause of action. The defendant has filed a motion to dismiss this Count, and it is this motion which is presently before the Court for decision. Memoranda have been submitted by both parties, and a hearing has been held in open court.

It is alleged in Count II that it was common knowledge that Novick was manager of the Soul Bridge, that by reason of such newspaper article the public was led to believe that Novick was arrested for violations of the law and that such article was libelous *per se*. It is further alleged that such publication imputed to Kasjoco conduct casting aspersions upon its business character, implying that it had engaged a manager who violated state narcotics laws and inferring that the Soul Bridge was an undesirable and immoral place for teenagers to attend. No particularized allegations of special damages are included in either Count I or Count II of the complaint.[2]

Although Maryland law controls in this diversity action, the parties are in agreement that there are no reported decisions of the Maryland Court of Appeals applying the principles that pertain in a defamation action brought by a corporation. It is clear, however, under Maryland law that if the language used is not defamatory *per se*, the plaintiff is required to allege and prove that special damages resulted from the publication. Heath v. Hughes, 233 Md. 458, 463, 197 A.2d 104 (1964); Bowie v. Evening News, 148 Md. 569, 129 A. 797 (1925). Whether the words used were in and of themselves actionable is a question of law for the court to determine in the first instance. Heath v. Hughes, supra; Maas v. National Casualty Co., 97 F.2d 247, 249 (4th Cir. 1938).

Both parties agree that the general rule applicable to a corporate plaintiff in an action for libel is that since a corporation has no reputation in the sense that an individual has, it is only with respect to its credit, property or business that a corporation can be injured by a false publication. Diplomat Electric Inc. v. Westinghouse Electric Supply Co., 378 F.2d 377, 381 (5th Cir. 1967); 53 C.J.S. Libel and Slander § 34; Anno. 52 A.L.R. 1199 (1928). Restatement of Torts, § 561(1) states the rule as follows:

> "One who falsely, and without a privilege to do so, publishes of a corporation for profit matter which tends to prejudice it in the conduct of its trade or business or to deter third persons from dealing with it, is liable to the corporation under the conditions stated in § 558." [3]

The publication here quite clearly is related in no way to the credit or property of Kasjoco. Plaintiffs contend, however, that since Kasjoco is the owner of the Soul Bridge, its business reputation in the community of Ocean City, Maryland, has been damaged by statements that imputed violations of the narcotics laws to the Soul Bridge's "operator" or manager.

Authorities dealing with the subject generally hold that an imputation defamatory to stockholders, officers or employees of a corporation does not constitute defamation of the corporation itself in the absence of an allegation of special damages. Prosser, Law of Torts,

---

2. Allegations of special damages, where required, must be stated with particularity, including either the loss of particular customers by name or a general diminution of business and extrinsic facts showing that such special damages were the natural and direct result of the false publication. Testing Systems, Inc. v. Magnaflux Corporation, 251 F.Supp. 286 (E.D.Pa.1966); Erick Bowman Remedy Co. v. Jensen Salsbery Laboratories, 17 F.2d 255, 52 A.L.R. 1187 (8th Cir. 1926).

3. Under § 558, to create liability for defamation there must be an unprivileged publication of false and defamatory matter of another which (a) is actionable irrespective of special harm, or (b) if not so actionable, is the legal cause of special harm to the other.

§ 106 (3d Ed. 1964); Restatement of Torts, § 561(1), Comment a; 53 C.J.S. Libel and Slander § 34, p. 83. In Adirondack Record, Inc. v. Lawrence, 202 App.Div. 251, 195 N.Y.S. 627 (1922), the publication accused the editor of a newspaper owned by the corporate plaintiff of being a hypocrite, a drunkard, a gambler and an immoral man. The lower court denied the defendant's motion to dismiss the complaint as to the corporation. Reversing the decision of the lower court and holding that the corporate owner of the newspaper employing such editor could not maintain an action for libel based on published words relating to such employee, the Court said the following at page 632:

"The other ground of the decision below is that libeling the editor of a paper, by accusing him of being a hypocrite, a drunkard, a gambler, etc., necessarily affects the business of the corporation, to its financial loss, which owns the paper and employs the editor. We think otherwise, under the authority of Hapgoods v. Crawford, supra, and the other cases to which we have referred. If any recovery were to be permitted in such a case, it should be upon proper allegation of special damage. The gist of the charge against the editor is his mismanagement of himself, and not his mismanagement of the Record. We cannot see how such a charge necessarily works pecuniary loss by the corporation."

Life Printing & Publishing Co. v. Field, 324 Ill.App. 254, 58 N.E.2d 307 (1944), involved a newspaper article implying that the publisher of the corporate plaintiff was one of the founders of an anti-Semitic organization. In holding that the publication was not libelous *per se* as to such corporate plaintiff, the Court said the following at page 310:

"Plaintiff being a corporation, no question of personal reputation can be involved, and the defamation must assail its financial position, its business methods, or accuse it of fraud or mismanagement. * * * Words spoken or written of a stockholder or officer give no right of action to the corporation unless spoken or written in direct relation to the trade or business of the corporation. If they relate solely to the stockholder, officer or employee in his private or personal capacity, only the individual can complain."

To the same effect are the following cases: Cal-Therm Industries v. Dun & Bradstreet, 75 F.Supp. 541 (S.D.N.Y. 1948); Memphis Tel. Co. v. Cumberland Tel. & Tel. Co., 145 F. 904 (6th Cir. 1906); Brayton v. Cleveland Special Police Co., 63 Ohio St. 83, 57 N.E. 1085, 52 L.R.A. 525 (1900).

In the present case there is no allegation or imputation that the establishment known as the Soul Bridge is a place where narcotics were illegally sold or used. The "operators" mentioned in the article were not arrested on the premises of the Soul Bridge but were apprehended at "a private cottage in West Ocean City". Interpreting the publication and the allegations of the complaint in a light most favorable to the plaintiff Kasjoco, the most that can be said is that it is charged that the manager employed by Kasjoco to run the Soul Bridge was arrested for a narcotics violation. In the absence of statements reflecting discredit upon the method by which Kasjoco conducts its business, no injury to the business reputation of the corporate plaintiff results from such a charge.

In opposing the pending motion, the plaintiffs rely principally on Neiman-Marcus Co. v. Lait, 107 F.Supp. 96 (S.D. N.Y.1952). In that case the corporate owner of a well-known retail store in Dallas, Texas, as well as certain individual employees, brought an action for libel against the authors of a book which mentioned the store by name and stated that certain female employees were prostitutes and certain male employees were homosexuals. It was alleged in the complaint that the book charged Neiman-

Marcus with participation in illegal and immoral acts. In denying a motion to dismiss as to the corporate plaintiff, the Court found that the publication raised a question of fact for the jury whether or not the corporation was directly accused of importing and hiring prostitutes and homosexuals and whether or not the corporate plaintiff was prejudiced in the conduct of its business by a publication stating that certain classes of its employees were composed of such undesirable persons. The Court further found that apart from the consideration whether the language in question was so defamatory as to directly prejudice the corporate plaintiff in the conduct of its business, the complaint might well be considered as alleging special damage.

 In the pending case, it is not charged in the publication that Kasjoco knowingly employed a manager who violated narcotics laws or that Kasjoco knowingly permitted narcotics operations to be conducted on premises of the Soul Bridge. Nor can the publication here by innuendo be read as having any such meanings. The office of the innuendo is to connect the defamatory matter with the other facts set out so as to show the meaning and application of the charge, but it cannot enlarge or restrict the natural meaning of the words or introduce new matter. Phillips v. Union Indemnity Co., 28 F.2d 701 (4th Cir. 1928). In the absence of statements connecting the corporate plaintiff in some way with the criminal activities imputed to its manager, the business reputation of Kasjoco is not discredited as a result of the publication of the newspaper article in question.[4] Count II therefore can state a cause of action only if it sets forth with particularity the damages sustained by Kasjoco.

For the reasons stated, defendant's motion to dismiss Count II of the complaint is granted. Counsel should prepare and submit an appropriate order.

4. Reference to the Soul Bridge as a "teenage hangout" is likewise not libelous *per se* in the context in which this phrase is used in the newspaper article.