**Theresa PACE and Christine Lambert**

v.

**Patrick E. McGRATH.**

**Civ. No. 72–548–K.**

United States District Court,
D. Maryland.

June 24, 1974.

---

Charles E. Chlan, Towson, Md., for plaintiffs.

James J. Doyle, Jr., John B. Jaske, and Sherbow, Shea & Doyle, Baltimore, Md., for defendant.

FRANK A. KAUFMAN, District Judge.

In this case, plaintiffs, citizens of the State of Delaware, bring this libel action against the defendant, a citizen of the State of Maryland. Jurisdiction is present pursuant to 28 U.S.C. § 1332.[1] Defendant has filed a motion for summary judgment. In sworn answers to interrogatories, Christine Lambert, one of the plaintiffs, included the following statement:

> In the afternoon of September 1, 1971, the Wednesday preceding Labor Day, Patrick E. McGrath,[2] and an un-

1. The original complaint, prior to amendment, was brought by an additional third plaintiff, a corporation which was a citizen of the State of Maryland, and also named an additional defendant, the Hearst Corporation, the owner and operator of WBAL–TV, Channel 11, Baltimore, Maryland, and a citizen of the State of Delaware. After counsel for defendants raised the issue of lack of diversity and after this Court noted that issue, counsel for plaintiffs, without objection by counsel for the defendant, was permitted to drop as parties in this case the two corporations. *See* Kelly v. Eclipse Motor Line, 305 F.Supp. 191, 199 n. 2 (D.Md.1969), *aff'd on other grounds*, 432 F.2d 1009 (4th Cir. 1970); 3 J. Moore, Federal Practice § 15.09, p. 947 and cases cited thereat and in the 1974 Supplement to Vol. 3 at p. 81 (supplying additional citations to note 14, p. 951 of original text).

2. The defendant herein.

known photographer stormed into our restaurant and he stated quite excitedly that he had just learned that "a rare bacteria from Japanese waters had entered the Maryland Chesapeake Bay and contaminated the crabs which had made the 320 people sick". I told him we had not cooked the crabs, that Meredith and Meredith of Dorchester County had cooked the crabs. Mr. McGrath would not listen to me, he stated, "This was history, never before known in the United States and this was news, and I want pictures of the Elkton Crab Pot and its crabs". Theresa[3] and I both tried to reason with the defendant and even tried to get him to talk to our lawyer, but he refused. We told him several times that we had not cooked the crabs that caused the 300 people to become sick. He would not listen and continued to harass us and we asked him to leave. He replied that he "did not need our permission to take a photograph of our sign and would do just that". He left the restaurant and had the photographer take pictures of our sign Elkton Crab Pot and our restaurant. That evening on the Television Station Channel 11, the defendant caused photographs of the Elkton Crab Pot to be published [with the following verbal telecast:] * * * "More than 300 persons became ill after eating steamed crabs purchased from an Elkton, Maryland restaurant. They experienced nausea, diarrhea and abdominal pains. Some were hospitalized. The Maryland Health Department found that the crabs had been infected with a bacteria . . . new to this country . . . called vibrio parahemolyticus[.]

Improper food handling is the major cause of this new type of food poisoning. In the case of the crabs, the bacteria probably was killed during the steaming process. But the steamed crabs were shipped with live crabs and apparently became reinfected. How this Asian bacteria got into U.S. waters is unknown. Health Officials think it probably came from foreign merchant ships discharging their bilge pumps. Maryland authorities say there is no cause for public alarm about the new disease. Routine sanitary procedures should keep it from becoming a serious problem. There is some reason for concern, however, because the new disease is similar to salmonella, which is sometimes fatal to infants and older people". * * *

The script was written and narrated by the defendant, Patrick E. McGrath, a reporter for WBAL–TV, Channel 11, Baltimore, Maryland, on the 11:00 P.M. newscast on September 1, 1971. That same telecast also carried the following statement by Dr. Neil Solomon, Secretary of the Department of Health and Mental Hygiene of the State of Maryland, given to the defendant in an interview:

This has been the . . . (unintelligible) time in medical history that this organism has been found to cause food poisoning in the United States. It's well been known to be the major organism that causes this type of disease in Japan but never before has it been isolated to show that it caused disease in the United States. Now this isn't limited just to Maryland. This organism has now been found in the waters off the Chesapeake Bay so the organism is there. The potential for disease is there. We have notified the Federal Drug Administration, the Communicable Disease Center, and they've notified doctors throughout the country. We have for the first time identified this organism, had only 300 people affected by it, and notified them what the proper treatment is.

In their depositions taken by defendant, the two plaintiffs have testified:

1. They opened a restaurant known as the Elkton Crab Pot in Elkton, Maryland in July 1970.

3. Theresa Pace, one of the two plaintiffs herein.

2. In the summer of 1971 and until mid-August of 1971, they purchased their crabs from Meredith and Meredith which were delivered "live" several times a week by truck by Meredith and Meredith to the plaintiffs' restaurant.

3. Plaintiffs cooked the crabs as their business demanded.

4. Plaintiffs received an order from an organization for a crab feast to be held on August 14th for 80 bushels of steamed crabs.

5. Because plaintiffs did not have sufficient facilities to cook 80 bushels of crabs and at the same time handle the demands of the customers who visited their restaurant, they ordered the 80 bushels of crabs from Meredith and Meredith to be cooked in advance by Meredith and Meredith.

6. Meredith and Meredith delivered the 80 bushels of crabs to plaintiffs' restaurant on or about 9:00 or 10:00 P.M. on Friday night, August 13, 1971.

7. Plaintiffs kept those crabs in their walk-in refrigerator overnight until they were picked up by the people who had ordered them, between 8:30 and 9:00 A.M. on Saturday morning, August 14, 1971.

8. The crabs were apparently kept overnight in the same walk-in refrigerator as the live crabs plaintiff had on hand at the restaurant for cooking and service to customers as ordered.

■ Initially, it is for this Court (under Maryland law) to determine whether the newscast is capable of bearing the innuendo or particular meaning that plaintiffs ascribe to it. *See* Bowie v. Evening News, 148 Md. 569, 579–580, 129 A. 797 (1925); Weeks v. News Pub. Co., 117 Md. 126, 131–132, 83 A. 162 (1912). *See also* Werber v. Klopfer, 260 Md. 486, 493–495, 272 A.2d 631 (1971); M & S Furniture Sales Co., Inc. v. Edward J. De Bartolo Corp., 249 Md. 540, 544–546, 241 A.2d 126 (1967); Restatement of Torts § 614 (Tent. Draft No. 20

April 25, 1974).[4] "[T]he office of the innuendo is to connect the defamatory matter with the other facts set out, so as to show the meaning and application of the charge, it cannot enlarge or restrict the natural meaning of the words, or introduce new matter." Phillips v. Union Indemnity, 28 F.2d 701, 702 (4th Cir. 1928). Judge Soper's above-quoted words are set out and relied upon in Maas v. National Casualty Co., 97 F.2d 247, 249 (4th Cir. 1938). Section 563[5] of the Tentative Draft of The Restatement of Torts, *supra*, states:

> The meaning of a communication is that which the recipient correctly, or mistakenly but reasonably, understands that it was intended to express.

■■ It is also for the Court (under Maryland law) initially to determine whether the innuendo or particular meaning which can be fairly ascribed to the telecast is defamatory. Casale v. Dooner Laboratories, Inc., No. 72–180 (4th Cir. July 13, 1973); Novick v. Hearst Corp., 278 F.Supp. 277, 279 (D. Md.1968); Heath v. Hughes, 233 Md. 458, 463, 197 A.2d 104 (1964); Walker v. D'Alesandro, 212 Md. 163, 179, 129 A.2d 148 (1956); Brinsfield v. Howeth, 107 Md. 278, 284, 68 A. 566 (1908); Tentative Draft of The Restatement of Torts, *supra* § 614. If this Court decides both that the telecast is capable of supporting the innuendo or meaning pressed by the plaintiffs, and that the script plus the innuendo is defamatory, it is for the jury to decide whether the telecast was in fact understood by the viewers in the defamatory sense. Tentative Draft of The Restatement of Torts, *supra* § 614 at p. 274.

■ Furthermore, it appears to be settled law that "the plaintiff must sustain the burden of pleading and proof, by way of 'colloquium,' that the defamatory meaning attached to him." W.

---

4. There is no change of substance in that section from Restatement of Torts § 614 (1938).

5. That section is identical with Restatement of Torts § 563 (1938).

Prosser, Handbook of the Law of Torts § 111 at p. 749 (4th ed. 1971).

Plaintiffs claim that those members of the public who viewed and listened to the complained of telecast believed that Elkton Crab Pot poisoned over 300 persons by improper food handling and that the telecast was both capable of being, and was indeed, so understood. Given the fact that there was in one program the telecast of the picture of the restaurant, the defendant's script and Dr. Solomon's statement, this Court agrees that the communication was capable of being understood as plaintiffs allege it was. The judgment of a court with regard to issues of this type must be made on a case-by-case basis. *See, e.g.*, on the one hand, Holmes v. Curtis Pub. Co., 303 F.Supp. 522 (D. S.C.1969), permitting a plaintiff to survive defendant's motion to dismiss, and on the other hand, All Diet Foods Distributors, Inc. v. Time, Inc., 56 Misc.2d 821, 290 N.Y.2d 445 (1967), reaching the opposite result. *See also* the discussion in Tentative Draft of The Restatement of Torts, *supra* § 563 Comment d.

In the face of defendant's motion for summary judgment, the facts must be viewed as plaintiffs have presented them. From that point of view the facts and the applicable law discussed *supra* require the denial of defendant's motion. At trial, however, plaintiffs will be required to bear the burden of proving with convincing clarity that the alleged defamation was published by defendant with knowledge of its falsity or in reckless disregard of its truth or falsity within the purview of New York Times v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) and its progeny. That burden attaches because the subject matter of the telecast involved "an issue of public concern", Tentative Draft of The Restatement of Torts, *supra* § 581B(d),[6] within the meaning of Rosenbloom v. Metrome-

dia, Inc., 403 U.S. 29, 91 S.Ct. 1811, 29 L. Ed.2d 296 (1971), and Time, Inc. v. Hill, 385 U.S. 374, 87 S.Ct. 534, 17 L.Ed.2d 456 (1967). *See* United Medical Laboratories v. Columbia Broadcasting System, 404 F.2d 706 (9th Cir. 1968), cert. denied, 394 U.S. 921, 89 S.Ct. 1197, 22 L.Ed.2d 454 (1969); Holmes v. Curtis Pub. Co., *supra*; All Diet Foods Distributors, Inc. v. Time, Inc., *supra*. In view of plaintiffs' allegations as to the defendant's statements and attitude, and the inferences which may presumably be drawn therefrom, plaintiffs are entitled to the opportunity to show that they can bear the burden thrust upon them by New York Times v. Sullivan, *supra*, and the subsequent decisions of the Supreme Court which have extended and applied the doctrine of that case.

---

6. That proposed section contains entirely new material which does not appear in the 1938 Restatement.