Francis D. BURRASCANO

v.

United States Attorney General, Mr. LEVI, United States Director of Prisons, Norman Carlson, Warden of FCI, Danbury, Conn., Mr. Wilkenson, Hospital Administrative Officer, E. Czarneck, Hospital Staff Nurse, Mr. Depelto, Ass't U.S. Attorney, R. S. Schulman, District of Balt., Md., Warden of City Jail, Balt., Md., Mr. Kamka, Mayor, City of Balt., Md., Hospital Administrative, City Jail, Balt., Md., Newspaper, "the Sun" [sic].

Civ. A. No. N–77–284.

United States District Court,
D. Maryland.

March 23, 1978.

Francis D. Burrascano, in pro. per.

Francis D. Murnaghan, Jr., Baltimore, Md., for defendant, The Sun Newspaper.

Benjamin L. Brown, City Sol. of Baltimore City, William Hughes, Chief Sol. and G. Denmead LeViness, Asst. Sol., Baltimore, Md., for defendants Mayor of the City of Baltimore, Warden of Baltimore City Jail, and Administrator of the Hospital, Baltimore City Jail.

Russell T. Baker, Jr., U. S. Atty., for the District of Maryland.

Neal M. Janey, Asst. U. S. Atty., Baltimore, Md., for all of the other defendants.

## MEMORANDUM

### On Motions to Dismiss

NORTHROP, Chief Judge.

On March 2, 1977, "Dr." Francis D. Burrascano filed a petition for writ of habeas corpus, naming as respondents the ten persons (natural and legal) listed in the caption hereof. Burrascano, in federal custody as the result of a sentence imposed by the Court following his plea of guilty in *United States v. Crowell,* No. N–76–0275 (D. Md. Nov. 11, 1976) does not in his petition seek vacation of his sentence, release from confinement, or any other relief that can be granted pursuant to 28 U.S.C. §§ 2254 and 2255. Rather, Burrascano's petition seeks a total of $7,900,000 in damages and other relief in consequence of three alleged wrongs. Thus, the "petition" will be treated as a civil complaint. Potential jurisdictional bases therefor will be dealt with hereafter. All respondents have responded to the complaint, and plaintiff, after having been informed of his right to respond, has responded to defendants' motions.

The first of the wrongs of which Burrascano complains involves his incarceration in the Baltimore City Jail pending his transfer to a federal institution. Although the complaint alleges only perfunctorily that Burrascano was "given cruel and unusual punishment from prison officials since his first day of incarceration . . .," paragraph 2 thereof, when liberally construed, incorporates by reference the allegations raised in an earlier, handwritten petition for habeas corpus relief filed by Burrascano during his period of incarceration in the City Jail (November 12, 1976–December 3, 1976), but withdrawn by him on December 1, 1976. In that now-revived petition, plaintiff's claims are set forth with specificity. His first claim (paragraph 7) is that, in the dining room of the City Jail, he encountered a leaky ceiling. He also complains that the floor, tables and kitchen were dirty. There is no allegation that the food was unfit for consumption or that he was prevented from taking in sufficient nourishment. Even liberally construed, *see Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), the complaint as to this state of affairs fails to rise above the level of a common gripe about the cleanliness of the City Jail's dining area. This is hardly a matter of constitutional dimension in view of the bounds of any reasonable interpretation of one's rights to be free from cruel and unusual punishment. *Compare McCray v. Burrell,* 516 F.2d 357, 367 (4th Cir. 1975) *with Sweet v. South Carolina Department of Corrections,* 529 F.2d 854, 862 (4th Cir. 1975). Thus, no cognizable claim for damages is alleged with regard to dining room conditions.

The second allegation relevant to his confinement in the City Jail is found in paragraph 11 and is to the effect that Burrascano "hasn't rec'd his medicine [for mild hypertension] since his transfer to Section M. . . ." The preceding paragraph of the complaint fixes that transfer date as November 23, 1976. The complaint was dated November 24, 1976. This time frame makes self-evident the proposition that no "deliberate indifference" in the sense of *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) has been alleged. For another allegation, Burrascano complains (paragraphs 12–13) that he was denied permission by a Captain Davis to go to the inmate law library. This incident allegedly occurred on the day the complaint was prepared, November 24, 1976. Even granting a liberal construction to the complaint and assuming the truth of the allegation, this isolated, transitory incident does not amount to the kind of denial of *meaningful* access to legal materials as will invoke constitutional safeguards. *See Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). Finally, Burrascano complains of his transfer between sections of the City Jail. This claim, no matter how liberally construed, clearly states no violation of his constitutional rights. *Meachum v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976). Thus, nowhere in his several pleadings does plaintiff state a cognizable claim for relief, either under 42 U.S.C. § 1983 or any other jurisdictional framework, against the respondents identified as "Warden of City Jail, Balt., Md./Mr. Kamka"; "Mayor, City of Balt., Md."; and "Hospital Administrative, City Jail Balt., Md." and the complaint must be dismissed as to all of them.

With regard to the defendants identified as "United States Attorney General, Mr. Levi"; "United States Director of Prisons, Norman Carlson"; "Warden of FCI., Danbury Conn., Mr. Wilkenson"; "Hospital Administrative Officer, E. Czarneck"; and "Hospital Staff Nurse, Mr. Depelto," Burrascano's complaint alleges that he was denied proper medical care from the date of his arrival at the FCI, Danbury, December 3, 1976, to the date of the complaint, December 5, 1976. Again, plaintiff is complaining of a *de minimis* delay in the treatment of his hypertension, and, again, even the most liberal construction of his complaint would fail to find alleged therein the "deliberate indifference" condemned by the Court in *Estelle v. Gamble, supra.* Therefore, the complaint, insofar as it purports to state a claim against the enumerated defendants for denial of medical care, must be dismissed.

The real gravamen of plaintiff's complaint is set forth in paragraphs 7 through 9 of the complaint and pertains to defendants Schulman and the *Baltimore Sun.* It seems that the following appeared in a *Baltimore Sun* article on August 10, 1976, concerning a major drug conspiracy in which Burrascano was involved:

Late yesterday, Francis D. Burrascano, 43, of Trenton, pleaded guilty before Judge Northrop to the conspiracy charge. Burrascano denied participating in the conspiracy itself, but admitted delivering a quantity of PCP to another person involved in the case.

Peter Ward, an assistant federal public defender, told Judge Northrop no plea bargaining was involved in Burrascano's case. However, it was learned that the man will be given a new identity through the government's witness protection program, designed to protect witnesses from reprisals.

Two days later, the following correction appeared:

In its Tuesday editions, *The Sun* incorrectly reported that Francis D. Burrascano, 43, of Trenton, N.J., was to be placed in a witness protection program after pleading guilty to a drug charge involving manufacture and distribution of phencyclidine, a hallucinogen known as PCP.

Chief Judge Edward S. Northrop accepted Burrascano's plea Monday. Five other men are currently on trial in federal court on the same charges, but Burrascano will not testify in it, and he is not to enter the protection program.

*The Sun* regrets the error.

Burrascano alleges that because of this error by the Sun papers, because of the "false information" underlying it, allegedly given to the paper by Assistant U.S. Attorney Schulman, and because of the failure of the Attorney General of the United States to effect a correction of "all wrong in reference to the false information," he has been shunned and avoided by fellow inmates, has been called a liar and informer by them, and faces the threat of harm from inmates who view informants dimly. In consequence of these wrongs, he prays $1,900,000 damages from the United States and $5,000,000 from *The Sun.*

 As to the defendant *Sun,* plaintiff failed in his complaint to allege any jurisdictional basis for his claim. Clearly, no "state action" by the *Sun* is alleged so as to bring the suit within the ever-expanding umbrella of 42 U.S.C. § 1983. In his "reply affidavit," Burrascano alleges jurisdiction over *The Sun* on the basis of 28 U.S.C. § 1331(a) and 28 U.S.C. § 2680(a). As to the former statute, it is clear that no federal question is raised by this aspect of Burrascano's lawsuit. As to the latter statute, the inapplicability of the Federal Tort Claims Act is so patent as not to need exposition.

 Although there has been no allegation of diversity of citizenship, it is possible that the requisite diversity exists. 28 U.S.C. § 1332(a) (1970). In view of the fact that, questions of privilege aside, the complaint herein appears to state a common law claim against *The Sun* for libel, the complaint should not, under the doctrine of *Haines v. Kerner, supra,* be dismissed summarily even though jurisdiction is not properly alleged. Therefore, plaintiff is given leave to amend his complaint, within twenty days from the date hereof, properly to allege diversity of citizenship, *if in fact* such diversity exists.[1] If such an amendment is not received within the time specified, the complaint will be dismissed, as to *The Sun,* with prejudice.

 As to defendants Schulman and the Attorney General, it is clear that no claim against these federal officers has been or can be stated under the state-action jurisdictional basis of 42 U.S.C. § 1983. Nor is there alleged any basis for diversity jurisdiction. 28 U.S.C. § 1332(a) (1970). There is, however, the possibility of a claim pursuant to 28 U.S.C. § 1331(a) and the doctrine of liability of federal officers for constitutional torts developed in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) and its progeny. Even assuming that there is a jurisdictional basis for Burrascano's complaints against Schulman and the Attorney General, it is clear that under the doctrine of *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), the alleged actions of these defendants cannot, even affording the complaint a charitably broad construction, be said to have amounted to constitutional torts. Therefore, the complaint will be dismissed as to defendants Schulman and the Attorney General. *See also Barr v. Matteo,* 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959).

For the reasons stated, a judgment will be entered separately dismissing the complaint (captioned as a petition for writ of habeas corpus), with prejudice, as to all defendants (denominated respondents) except *The Sun.* The judgment will state that the complaint will be dismissed, with prejudice, as to *The Sun* unless the complaint is amended, within twenty days hereof, properly to allege diversity of citizenship.

## MEMORANDUM

### I.

On October 11, 1977, a Memorandum and Judgment thereon, copies of which are appended hereto, were filed in the captioned case, dismissing the complaint as to all de-

---

1. Plaintiff is reminded, however, that knowingly false allegations may subject him to criminal prosecution.

fendants except *The Sun,* a newspaper of general circulation in Baltimore, Maryland. The plaintiff was, by this Court's October 11, 1977 ruling, given leave to amend his complaint to allege a proper jurisdictional basis for his suit against *The Sun,* the Court having determined that the libel action pleaded in plaintiff's original complaint could not proceed upon either of the jurisdictional grounds therein or thereafter alleged, *viz.,* 28 U.S.C. § 1331(a) (federal question) or 28 U.S.C § 2680(a) (Federal Tort Claims Act); certainly, no state action could possibly be alleged within the bounds of the complaint so as to confer jurisdiction over *The Sun* under the ordinary font of prisoner litigative jurisdiction, *i.e.,* 42 U.S.C. § 1983. *See Burton v. Wilmington Parking Authority,* 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961).

Following this Court's October 11, 1977 instructions, plaintiff amended his complaint to allege diversity of citizenship, 28 U.S.C. § 1332(a). It is clear that defendant is a corporate citizen of Maryland. In his amended complaint, filed November 28, 1977, plaintiff alleges, in apparent good faith, that he is a resident of New Jersey. Although it is black-letter law that the diversity jurisdiction of the District Court cannot be invoked merely by an allegation of residence, *Bingham v. Cabbot,* 3 Dall. (3 U.S.) 382, 1 L.Ed. 646 (1798), it is also clear that the Court is bound to accord a prisoner's pleadings an extraordinary measure of liberal interpretation. *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam); *cf. Stifel v. Hopkins,* 477 F.2d 1116 (6th Cir. 1973). Thus, the Court will assume that its jurisdiction is properly invoked under 28 U.S.C. § 1332(a), the amount in controversy exceeding, as pleaded, $10,000, exclusive of interest and costs.

Defendant has moved for summary judgment, arguing in support that the complaint, no matter how liberally construed, fails to state a claim for libel cognizable under Maryland law. Defendant also argues that, even if the complaint states a valid cause of action for libel, it is protected from liability here by a qualified First Amendment privilege, *see New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). In support of the latter line of defense, defendant has submitted the affidavit of the reporter who prepared the allegedly libelous article, which affidavit admits that the article was mistaken, but factually asserts that it was not mistaken on account of actual malice or reckless disregard for truth or falsity. Having been informed by the Court of his right to respond to defendant's motion, *Roseboro v. Garrison,* 528 F.2d 309 (4th Cir. 1975) (per curiam), plaintiff failed to submit any countering affidavit asserting matters of fact pursuant to Fed.R.Civ.P. 56(e). Rather, plaintiff submitted only a legally argumentative rebuttal to defendant's motion. No hearing is deemed necessary on defendant's motion. Local Rule 6.

## II.

In this, as in any diversity case, the Court is bound to apply controlling state law, *viz.,* that of Maryland, to the determination of matters of substantive law. *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The defendant's motion for summary judgment argues primarily that the communication here sued on was not libelous as a matter of law. Defendant cites no Maryland authority supporting this proposition, but it does marshall an array of treatise and other-jurisdiction authority in support of its position.

Although the facts are fully set forth in this Court's October 11, 1977 Memorandum, the Court will repeat the allegedly libelous (and admittedly false) communication here:

> Late yesterday, Francis D. Burrascano, 43, of Trenton, pleaded guilty before Judge Northrop to the conspiracy charge. Burrascano denied participating in the conspiracy itself, but admitted delivering a quantity of PCP to another person involved in the case.
>
> Peter Ward, an assistant federal public defender, told Judge Northrop no plea bargaining was involved in Burrascano's case. However, it was learned that the

man will be given a new identity through the government's witness protection program, designed to protect witnesses from reprisals.

Burrascano did not give information against any other defendants in the drug case in question (contrary to the innuendo of the article), nor was he, in fact, placed in the witness protection program. Plaintiff contends that the false portion of the communication in question has caused fellow inmates to label him an informant. Thus, they have shunned and avoided him, and, he fears, might cause him bodily harm. Whether, looking only to the technical rules of pleading innuendo and special damage, plaintiff has pleaded an action that would withstand demurrer in the Maryland courts, is a question that need not be answered for the reason that follows.

### III.

Under Maryland law, the question of whether a communication is defamatory is a legal question, within the province of the court rather than the jury. *M & S Furniture Sales, Inc. v. Edward J. DeBartolo Corp.,* 249 Md. 540, 241 A.2d 126 (1968). Although there is no Maryland authority directly on point, it is evident to this Court, as a matter of law, that a communication is not libelous if it merely accuses one of being a criminal informant. This result is compelled by the rule that, in order to be libelous, a false communication must hold the plaintiff up to scorn or ridicule in the eyes of a *significant* element of the community. The criminal element, albeit the milieu within which plaintiff's misdeeds have placed him, is simply not such an element:

> A communication to be defamatory need not tend to prejudice the other in the eyes of everyone in the community or all of his associates, nor even in the eyes of a majority of them. It is enough that the communication would tend to prejudice him in the eyes of a substantial *and respectable* minority of them . . . . The fact that a communication tends to prejudice another in the eyes of even a substantial group is not enough *if the group is one whose standards are so anti-*

*social that it is not proper for the courts to recognize them . . . .*

*Restatement (Second) of Torts* § 559, Comment e (1977) (Emphasis added).

The few cases that have considered the issue have squarely held that an accusation that the plaintiff has been an informant is not a defamatory communication. As Judge Lawson of the Court of Common Pleas of Ireland stated in *Mawe v. Pigott,* 4 Ir. R.C.L. 54 at 62 (1869):

> [It was] argued that amongst certain classes who were either themselves criminal, or who sympathized with crime, it would expose a person to great odium to represent him as an informer or a prosecutor, or otherwise aiding in the detection of crime; that is quite true, but we cannot be called upon to adopt that standard. The very circumstances which will make a person be regarded with disfavour by the criminal classes will rise his character in the estimation of right-thinking men. We can only regard the estimation in which a man is held by society generally; and thinking that this language, even when explained by the innuendoes, is not calculated to lower the Plaintiff in that estimation, and that it does not convey any imputation upon his character, we must allow this demurrer.

The American cases that have considered the question have reached the same result. *See Connelly v. McKay,* 176 Misc. 685, 28 N.Y.S.2d 327 (N.Y.Sup.Ct.1941); *accord, Rose v. Borenstein,* 119 N.Y.S.2d 288 (N.Y. City Ct.1953).

The Court is convinced that, if the question here presented were to come before the Maryland courts, the rule stated above would govern and would render plaintiff's complaint incurably susceptible to demurrer. Maryland generally follows the common law as to torts, and especially is this so with regard to libel and slander. *See, e. g., Heath v. Hughes,* 233 Md. 458, 197 A.2d 104 (1964). Although it might not be fashionable in these days of diminishing public regard for the institutions of justice, this Court (and, it believes, the Maryland courts)

would agree with the *Connelly* court, *supra*, 28 N.Y.S.2d at 329, that allowing a felon to recover damages on account of a false accusation of informant activities "would penalize the law-abiding citizen and give comfort to the law violator. It would impede law enforcement for the benefit of the anti-social."

## IV.

In view of the Court's resolution of the major issue presented herein, it is unnecessary to discuss other lines of defense, such as qualified privilege. For the reasons stated, it appears to the Court that there is no genuine dispute as to material fact and that defendant *The Sun* is entitled to judgment in its favor as a matter of law. Fed. R.Civ.P. 56. Judgment so providing will be separately entered, Fed.R.Civ.P. 58.