**David H. HILLMAN et al.**

v.

**METROMEDIA, INC., etc.**

**Civ. No. B–76–1171.**

United States District Court, D. Maryland.

May 8, 1978.

Steven A. Michael, Bethesda, Md., for plaintiffs.

John H. Mudd, H. Thomas Howell, Robert E. Scott, Jr., and Semmes, Bowen & Semmes, Baltimore, Md., for defendant.

## MEMORANDUM AND ORDER

BLAIR, District Judge.

This is a diversity action for libel in which plaintiffs, David H. Hillman and Melvin Lenkin, on behalf of Kent B Partnership trading as Kent Village Apartments, seek to recover damages from defendant Metromedia, Inc. Their claim is based on alleged statements made by a news commentator during defendant's television broadcast of its ten o'clock news program on April 19, 1976.

Suit was initially filed in the Circuit Court for Prince George's County, Maryland and was removed to this court on August 9, 1976. Upon defendant's motion, this court dismissed the original Declaration on December 8, 1976 for, *inter alia*, its failure to set forth the precise language on which plaintiffs' claim is based. Leave to amend was granted and plaintiffs filed their amended complaint on December 29, 1976. Presently pending before the court is defendant's motion to dismiss that amended complaint. A hearing on the motion to dismiss is unnecessary. Local Rule 6.

The broadcast in question was concerned generally with problems confronting officials in Prince George's County as a result of arsons and fire losses. The text of the broadcast is set out in paragraph 4 of the complaint and reads as follows:

| AUDIO | VIDEO |
| --- | --- |
| Death by fire has claimed twelve residents of Prince Georges County this year as compared to seven in all of 1975. Property damage has risen to almost four million dollars. County officials say arson is behind more than one out of every three blazes. With more on the situation, Channel 5's Roy Meacham. | Alan Smith (No visual aids) |
| Prince Georges County is in the middle of a brush fire epidemic. Fifty to sixty a day in the past week. This one was caused by a hot box on an overloaded railroad engine. Most come from simple carelessness. Many, much too many, are set by kids, officials say, who want the excitement of watching the firemen arrive and unfurl their hoses, spray big streams of water | Film of brush fire in wooded area. |

| AUDIO | VIDEO |
|---|---|
| ...for kicks. The probable cause for the half million dollar damage to the Kent Junior High School reported at 3:30 Sunday morning. They're still investigating, but officials say someone, probably a juvenile, broke into the school and set a blaze in a science room. The fire was under control in an hour but not before structural steel was bent. The heat was so intense smoke marks were burned off the classroom walls. | Picture of Kent Junior High School with sign viewable. |
| Also, on Saturday night at about seven P.M. someone tried to burn down the home of Robert Christopher. They didn't quite succeed but add $20,000 in Bowie to the arson damages bill. | Roy Meacham (No visual aids) |
| Example: A sixteen year old New Carrollton girl tried to break off her friendship with an eighteen year old boy. She didn't want him to show up again but he did two o'clock one morning and tried to burn up the house, the girl and her family. | |
| Example: A District Heights drug store tried to reduce its staff. A seventeen year old who was cut tried to cut back. The fire he set caused $90,000 in damage. | |
| Capital Heights, Seat Pleasant and Kentland are the areas singled out by fire investigators as the principal problem areas. | Picture of Apartment Building after fire. |
| Kentland was also the site last year of the gruesome murder by fire of a liquor store owner, his wife and two others. Robbery was a reported motive. | Picture of Kent Village Shopping Center with sign viewable. |

| AUDIO | VIDEO |
|---|---|
| The apartment houses behind the Kent Village Shopping Center present continuing troubles for firemen, but apartment fires in general are a special hazard for Prince Georges fire fighters. Large complexes present easy targets for thrill seekers, | Picture of Kent Village Apartments with sign viewable. |
| especially when storage rooms and other facilities are left unlocked making it easy for the casual arsonist. And the County has more than its share. Frequently youngsters no more than twelve. When parents don't know where they are, they are sometimes setting fires. | Roy Meacham (No visual aids) |
| This is Roy Meacham. | |

(Emphasis Added).

Defendant's motion to dismiss is, in large measure, founded on the legal proposition that this complaint must be dismissed unless the words are defamatory *per se* because, defendant avers, plaintiffs have failed to allege special damages resulting from the publication. Defendant contends that the broadcast at issue here was not defamatory *per se* and accordingly requests that the complaint be dismissed.

Such an argument invites this court to address the difficult distinction between libel *per se* and libel *per quod* and the consequences resulting therefrom. The question raised here—whether and when special damages must be alleged and proven in a libel action—has been the subject of heated debate among legal scholars and an area of frequent disagreement.[1] Thankfully, Maryland law in this area has been ably analyzed by Mr. Murnaghan in his article, *From Figment to Fiction to Philosophy—The Requirement of Proof of Damages in Libel Actions*, 22 Cath.U.L.Rev. 1 (1972) (hereinafter referred to as Murnaghan I), and further discussed by Judge Kaufman of this

---

1. *See, e. g.*, Prosser, *Libel Per Quod*, 46 Va.L. Rev. 839 (1960); Prosser, *More Libel Per Quod*, 79 Harv.L.Rev. 1629 (1966); Eldredge, *The Spurious Rule of Libel Per Quod*, 79 Harv.L. Rev. 733 (1966); Eldredge, *Variation on Libel Per Quod*, 25 Vand.L.Rev. 79 (1972).

court in *Sauerhoff v. Hearst Corporation*, 388 F.Supp. 117 (D.Md.1974), *vacated and remanded on other grounds*, 538 F.2d 588 (4th Cir. 1976). Both Mr. Murnaghan and Judge Kaufman in *Sauerhoff* were in agreement with the instant defendant's position, i. e., that where the language used by the defendant is not defamatory on its face, thereby requiring proof of extrinsic facts to show its libelous character, plaintiff must allege and prove special damages, which are defined as direct pecuniary loss. Murnaghan I at 25; 388 F.Supp. at 120. *See also Heath v. Hughes*, 233 Md. 458, 197 A.2d 104, 106 (1964). With the benefit of two recent defamation cases from the Maryland Court of Appeals, which were unavailable to Mr. Murnaghan and Judge Kaufman at the time of their pronouncements, this court will disagree and hold that Maryland law no longer recognizes any distinction between libel *per se* and libel *per quod* and that the requirement of pleading and proving special damages in cases where extrinsic facts are necessary to show the libelous nature of the statement no longer exists. Such a step is not to be lightly taken and will necessitate a brief discussion of the traditional law of libel in Maryland.

At the time of the *Sauerhoff* decision, Maryland presumed damages for libel where the libel was defamatory on its face, that is, without reference to extrinsic facts. As a result, damages in such cases of "libel *per se*," were whatever the jury chose to allow regardless of any proof by the plaintiff of harm actually suffered. *See* W. Prosser, *Handbook of the Law of Torts*, 762–63 (4th ed. 1971) (hereinafter referred to as Prosser); Murnaghan, *Ave Defamation, Atque Vale Libel and Slander*, 6 U.Balt.L.Rev. 27, 30–31 (1976) (hereinafter referred to as Murnaghan II). On the other hand, where resort to extrinsic fact was necessary to show the defamatory character of the statement, that is, where the statement was "libel *per quod*," the plaintiff was restricted to the recovery of special damages. Prosser at 763. Special damages did not include all facets of actual injury to the plaintiff, but instead were restricted to pecuniary loss alone. Accordingly, in cases of

libel *per quod*, plaintiff was denied recovery for such elements of actual harm as provable loss of reputation, the loss of society of others, and the injury to his feelings demonstrably growing out of the publication. Murnaghan II at 31.

In retrospect, the law of libel presented two widely divergent concepts for the recovery of damages, both of which were less than satisfactory. Where libel *per se* was alleged and proven the jury had untrammeled discretion in awarding damages. As a result, the law allowed the libel *per se* plaintiff an overly generous recovery. With libel *per quod* this situation was reversed; plaintiff, limited to his provable pecuniary loss, was denied recovery for legitimate, non-pecuniary, injury resulting from the defamatory statement. Thus, in neither instance were damages related to actual harm suffered by the plaintiff. Moreover, the libel *per se* plaintiff was not required to show fault on the part of the defendant; once he proved that the defendant had published a statement that was libelous on its face damages were presumed. Again the situation was reversed with the libel *per quod* plaintiff—without a showing of special damages no recovery could be had, even where the defendant had clearly acted wrongfully and injured the plaintiff in a non-pecuniary way.

In 1976 the Maryland Court of Appeals, responding to the Supreme Court's decision in *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), rewrote the Maryland law on defamation in *Jacron Sales Co., Inc. v. Sindorf*, 276 Md. 580, 350 A.2d 688 (1976), and *General Motors Corporation v. Piskor*, 277 Md. 165, 352 A.2d 810 (1976). *Gertz* was a libel case involving a suit by a private plaintiff against a media defendant. In order to accommodate the state's interest in protecting a person's reputation with the First Amendment guarantee of freedom of the press, the *Gertz* Court imposed a number of restrictions on possible recovery in a libel action. The Court held that in cases involving a private plaintiff and a media defendant the state may not impose liability without fault; with this

exception the states were free to define the appropriate standard of liability for themselves. 418 U.S. at 347, 94 S.Ct. 2997. The Court further found that punitive damages could not be levied against a media defendant absent a showing of actual malice as defined in *New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).[2] 418 U.S. at 350, 94 S.Ct. 2997. Finally, the Court ruled that non-punitive damages against a media defendant were limited to recovery for "actual injury," which was not confined to out-of-pocket loss but rather included such factors as impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering. *Id.* at 350, 94 S.Ct. 2997. Thus in one clean stroke the Supreme Court did away with two long standing doctrines of libel law: the recovery of presumed damages and the concept of liability without fault.

 *Gertz* was, of course, a case involving a media defendant and its holding was clearly limited to media expression. Nevertheless the Maryland Court of Appeals, through *Jacron Sales Co., Inc. v. Sindorf, supra,* chose to apply its holding to *all* cases of defamation, irrespective of the nature of the defendant. 350 A.2d at 695. Consequently in all defamation cases in Maryland, except those involving public figures or public officials,[3] the plaintiff will be permitted to recover only if he can establish fault on the part of the defendant. The standard of fault adopted by the *Jacron*

court is that of negligence.[4] 350 A.2d at 697. Moreover, all defamation defendants are now shielded from the harsh consequences of strict liability and presumed damages. 350 A.2d at 694. Accordingly, plaintiffs will be restricted to recovery of actual damages, not limited to out-of-pocket loss. Murnaghan II at 31; Comment, *State Defamation Law in the Wake of Gertz v. Robert Welch, Inc.*, 36 Md.L.Rev. 622, 635–36 (1977). Punitive damages may only be had upon a showing of actual malice under the *New York Times* standard. 350 A.2d at 694; Murnaghan II at 32.

Clearly then the major characteristics of traditional libel law in Maryland have become non-existent. Presumed damages and liability without fault are gone. Also, the distinction between libel and slander has been effectively eliminated. Murnaghan II at 31. Finally, and most importantly for purposes of the present case, there is no longer any need for the *per se—per quod* dichotomy. The termination of strict liability negates any rationale for continuing to maintain such a distinction. Since there is now one standard for measuring damages, that of actual injury, there is absolutely no reason to differentiate between cases where the libel is apparent from the words themselves and those where extrinsic facts must be proven to show the defamatory character of the statement.[5] Accordingly this court holds that under Maryland law there is no longer a distinction between libel *per se* and libel *per quod*. Hence, the failure to

---

2. In *New York Times*, actual malice was defined as knowing falsity or reckless disregard of the truth. 376 U.S. at 280, 84 S.Ct. 710.

3. In cases involving public figures or public officials, plaintiff must show actual malice, as defined in *New York Times v. Sullivan, supra,* as a prerequisite to any recovery.

4. The court adopted the standard of negligence as set forth in Restatement (Second) of Torts § 580B (Tent. Draft Nov. 21, 1975) which states:

§ 580B. Defamation of Private Person
One who publishes a false and defamatory communication concerning a private person, or concerning a public official or public figure in relation to a purely private matter not affecting his conduct, fitness or role in his

public capacity, is subject to liability, if, but only if, he
(a) knows that the statement is false and that it defames the other,
(b) acts in reckless disregard of these matters, or
(c) acts negligently in failing to ascertain them.
This section was incorporated without change in the approved version of the Restatement. *See,* 3 Restatement (Second) of Torts § 580B (1977).

5. Mr. Murnaghan, in his recent, post-*Jacron* article, is in agreement with this conclusion. Murnaghan II at 32; *see also* Comment, *State Defamation Law in the Wake of Gertz v. Robert Welch, Inc.*, 36 Md.L.Rev. 622, 631 (1977).

plead special damages in cases where extrinsic facts are necessary to show defamation is not ground for dismissal of the complaint. Defendant's motion to dismiss on the ground that plaintiffs have not pled special damages or libel *per se* will therefore be denied.

■ Defendant here also seems to argue that the words used in the broadcast, along with the visual representations which accompanied them, are incapable, as a matter of law, of bearing a defamatory meaning. This court disagrees. It is true that, "[i]nitially, it is for the court [under Maryland law] to determine the defamatory nature of the [communication], to decide 'whether the words charged in the declaration amount in law to libel . . .' *Brinsfield v. Howeth*, 107 Md. 278, 284, 68 A. 566, 567." *Casale v. Dooner Laboratories, Inc.*, 503 F.2d 303, 307 (4th Cir. 1973). Thus the court must determine whether a communication is capable of bearing a meaning that is defamatory. If so, then the jury must determine if in fact the recipient so understood the communication. *Sauerhoff v. Hearst Corporation, supra*, 388 F.Supp. at 121–22. This court is unable to say as a matter of law that the broadcast at issue here is incapable of bearing a defamatory meaning. It is possible to perceive the broadcast as an imputation that plaintiffs, as proprietors of Kent Village Apartments, failed to provide necessary security measures against the threat of arson by leaving storage rooms and other facilities unlocked, thereby "making it easy for the casual arsonist." So construed it would be defamatory in the opinion of this court. Whether the jury will so find is another matter which is, of course, not relevant to a decision on the motion to dismiss.

■ Defendant also contends that the broadcast was a constitutionally protected expression of editorial opinion. Unquestionably the expression of an opinion may not serve as a basis for a libel action. *Gertz, supra*, 418 U.S. at 339–40, 94 S.Ct. 2997. However, this court does not believe that the portion of the broadcast in question here was an editorial opinion. Rather, the portion concerning unlocked storage rooms and other facilities was clearly a statement of fact not subject to protection as the expression of an idea.

In sum then, this court feels that plaintiffs have met their burden of pleading an actionable claim for libel. Certainly a number of issues remain including the factual interpretation of the broadcast, the existence or non-existence of negligence on the part of the defendant, and the harm actually suffered, if any, by the plaintiffs. This court recognizes these issues but is of the opinion that they are properly within the province of the jury.

Accordingly, it is this 8th day of May, 1978, by the United States District Court for the District of Maryland, ORDERED that defendant's Motion to Dismiss be, and the same hereby is, DENIED.

### ADDENDUM

Defendant in this case was sued in state court and removed the case to federal court pursuant to 28 U.S.C. § 1441. Feeling aggrieved by this court's construction of state law, defendant requested that this court certify controlling questions of law to the Court of Appeals of Maryland. This court has done so and the order denying defendant's Motion to Dismiss will be stayed pending decision of the Court of Appeals of Maryland.